Leonard W. Williamson, OSB #910020
VAN NESS WILLIAMSON LLP
960 Liberty St. SE, Suite 100
Salem, Oregon 97302
(503) 365-8800
l.williamson@vwllp.com

Bradley A. Benbrook*
Stephen M. Duvernay*
BENBROOK LAW GROUP, PC
701 University Avenue, Suite 106
Sacramento, California 95825
Telephone: (916) 447-4900
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com

*Pro hac vice applications to be submitted

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| DALLIN MONTGOMERY; NICK HOLDWAY; KEVIN WALTERS; OREGON FIREARMS FEDERATION, INC.; and FIREARMS POLICY COALITION, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>ELLEN ROSENBLUM, in her Official Capacity as Oregon Attorney General; and CASEY CODDING, in his Official Capacity as Superintendent of the Oregon State Police,<br><br>Defendants. | Case No.: 3:24-cv-1273<br><br>**COMPLAINT FOR DECLARATORY, INJUNCTIVE, OR OTHER RELIEF** |

COME NOW Plaintiffs Dallin Montgomery; Nick Holdway; Kevin Walters; Oregon Firearms Federation, Inc. and Firearms Policy Coalition, Inc. ("Plaintiffs"), by and through undersigned counsel, and allege as follows:

## INTRODUCTION

1. The Second Amendment to the U.S. Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. The Amendment guarantees "an individual right to keep and bear arms," which is "a fundamental constitutional right guaranteed to the people." *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008). The Second Amendment is applicable to the States through the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010) (incorporating through Substantive Due Process); *id*. at 805 (Thomas, J., concurring) (incorporating through the Privileges or Immunities Clause). Indeed, "[t]he very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is *really worth* insisting upon." *Heller*, 554 U.S. at 634.

2. In 2023, Oregon enacted House Bill 2005 ("HB 2005"), which among other things bans (1) the manufacture, importation, sale, transfer, or possession of so-called "undetectable" firearms; (2) the sale, transfer, or possession of an unserialized firearm; and (3) the importation, sale, transfer, or possession of an unserialized unfinished frame or receiver (collectively, "the Bans" or "Oregon's Bans"). The net effect of HB 2005 is to criminalize the core aspects of the self-manufacture of firearms. Oregon's Bans are scheduled to take effect on September 1, 2024.

3. The Bans are unconstitutional and cannot stand. When, as here, "the Second Amendment's plain text covers an individual's conduct"—manufacturing arms, possessing the materials necessary to do so, and ultimately keeping and bearing such self-manufactured arms— "the Constitution presumptively protects that conduct. To justify its regulation, the government . . . must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022). Oregon

cannot meet its burden to justify the Bans here because they run directly counter to the Nation's historical tradition of firearm regulation.

4. Throughout American history, people have been free to personally manufacture, construct, and/or assemble arms for lawful purposes, including self-defense in the home. In defiance of this historical tradition, Oregon's Bans completely and categorically prohibit individuals not prohibited from exercising their Second Amendment protected rights from possessing, acquiring, and self-manufacturing firearms that are of types, functions, and designs, and are themselves, commonly owned and possessed firearms—self-made firearms that do not bear a manufacturer's serial number, as well as the component parts used to build such arms—by law-abiding citizens for lawful purposes.

5. Individual Plaintiffs Dallin Montgomery, Nick Holdway, and Kevin Walters, all Oregon citizens and members of Organizational Plaintiffs Firearms Policy Coalition, Inc. ("FPC") and Oregon Firearms Federation, Inc. ("OFF"), together with similarly situated Oregon-resident FPC and OFF members, face imminent and irreparable harm as a result of the Bans.

6. Plaintiffs bring this challenge because they unquestionably face "a realistic danger of sustaining a direct injury as a result of the law's operation or enforcement." *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 747 (9th Cir. 2020). Plaintiffs seek to vindicate their rights, and to immediately and permanently enjoin enforcement of Oregon's Bans as required to conform the law to the Constitution's text and Supreme Court precedent.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this matter under 28 U.S.C. § 1331 and 28 U.S.C. § 1343, because this Complaint seeks relief afforded by 42 U.S.C. § 1983, for past, continuing, and/or imminent violations of Plaintiffs' rights arising under the United States Constitution.

8. Venue is proper under 28 U.S.C. § 1391.

## THE PARTIES

9. Plaintiff Dallin Montgomery is an Oregon citizen residing in Clackamas County. Montgomery is a member of FPC and OFF. Montgomery holds an Oregon concealed carry permit

issued by the Clackamas County Sheriff's Office, and also holds a Washington concealed carry license. Montgomery possesses an item that falls within HB 2005's definitions of "unfinished frame or receiver" and "undetectable firearm." Specifically, Montgomery possesses an unserialized Glock-style semiautomatic pistol built from a polymer frame. But for HB 2005 and its threat of criminal sanctions, Montgomery would build or acquire additional arms that fall within HB 2005's prohibitions including by purchasing such items on the Internet through out-of-state retailers for shipment into Oregon.

10. Plaintiff Nick Holdway is an Oregon citizen residing in Lane County. Holdway is a member of FPC and OFF. Holdway holds an Oregon concealed carry permit issued by the Lane County Sheriff's Office. Holdway possesses multiple items that fall within HB 2005's definitions of "unfinished frame or receiver" and "undetectable firearm," including: an unserialized Glock-style semiautomatic pistol built from a polymer frame; an unserialized Glock-style polymer frame; an unserialized AR-platform rifle built from an "unfinished frame or receiver"; and an unserialized "unfinished frame or receiver" that he would manufacture into the receiver for an AR-platform rifle. But for HB 2005 and its threat of criminal sanctions, Holdway would build or acquire additional arms that fall within HB 2005's prohibitions including by purchasing such items on the Internet through out-of-state retailers for shipment into Oregon.

11. Plaintiff Kevin Walters is an Oregon citizen residing in Lane County. Walters is a member of FPC and OFF. Walters holds an Oregon concealed carry permit issued by the Lane County Sheriff's Office. Walters possesses multiple items that fall within HB 2005's definition of "unfinished frame or receiver" or its definition of "undetectable firearm." Specifically, Walters used a 3D printer to manufacture frames for three Glock-style semiautomatic pistols using PLA+ filament. After Walters learned that HB 2005 was pending, he abandoned his efforts to complete the process to build a complete functioning firearm. But for HB 2005 and its threat of criminal sanction, Walters would finish building these firearms and would use a 3D printer to manufacture additional firearms out of PLA+.

12. Plaintiff Firearms Policy Coalition, Inc. is a nonprofit membership organization incorporated in Delaware with a primary place of business in Clark County, Nevada. FPC works to create a world of maximal human liberty and freedom and to promote and protect individual liberty, private property, and economic freedoms. It seeks to protect, defend, and advance the People's rights, especially but not limited to the inalienable, fundamental, and individual right to keep and bear arms and protect the means by which individuals may exercise the right to carry and use firearms. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC's members reside both within and outside Oregon. FPC brings this action on behalf of its members in Oregon. FPC's members are adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein.

13. Plaintiff OFF is an Oregon public benefit corporation located in Canby, Clackamas County, Oregon. OFF is qualified as tax-exempt under 26 U.S.C. §501(c)(4). OFF seeks to defend the civil rights of all law-abiding individuals in Oregon including the fundamental right to build and acquire additional arms for personal use. OFF brings this action on behalf of its members in Oregon who are adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein.

14. Defendant Ellen Rosenblum is sued in her official capacity as Attorney General of the State of Oregon. As Attorney General, Defendant Rosenblum has the power to "advise and direct the district attorneys in all criminal causes and matters relating to state affairs in their respective counties" including in any prosecutions for violations of the laws challenged herein. ORS 180.060(5).

15. Defendant Casey Codding is sued in his official capacity as Superintendent of the Oregon State Police. As Superintendent, Defendant Codding oversees the state police force which has the power to enforce all criminal laws, including the laws challenged herein, throughout the state. ORS 181A.080.

## GENERAL ALLEGATIONS

**A.    House Bill 2005 Bans The Sale And Possession Of "Undetectable" Firearms, Unserialized Firearms, And Unserialized Non-Firearm Objects.**

16.    In 2023, Oregon enacted HB 2005, which in relevant part effectively bans the sale and possession of what it terms "undetectable" firearms, unserialized firearms, and certain unserialized non-firearm objects ("NFO"). The bill provides the following definitions:

"Undetectable firearm" means a firearm:

(a) Constructed or produced, including through a three-dimensional printing process, entirely of nonmetal substances;

(b) That, after removal of grips, stocks and magazines, is not as detectable as a security exemplar by a walk-through metal detector calibrated to detect the security exemplar; or

(c) That includes a major component that, if subjected to inspection by the types of X-ray machines commonly used at airports, would not generate an image that accurately depicts the shape of the component.

"Unfinished frame or receiver" means a forging, casting, printing, extrusion, machined body or similar item that:

(A) Is designed to or may readily be completed, assembled or otherwise converted to function as a frame or receiver; or

(B) Is marketed or sold to the public to be completed, assembled or otherwise converted to function as a frame or receiver.

HB 2005-C, § 1, enacted at ORS § 166.210(17) & (18).

17.    The bill makes it a felony to manufacture, import, offer for sale, sell, or transfer an undetectable firearm, and makes possession of an undetectable firearm a misdemeanor. HB 2005-C, § 3, enacted at ORS § 166.265.

18. HB 2005 also makes it a crime to offer for sale, sell, transfer, or possess an unserialized firearm. HB 2005-C, § 4, enacted at ORS § 166.266.

19. The bill generally criminalizes the import, offer for sale, sale, transfer, and possession of an "unfinished frame or receiver." HB 2005-C, § 5, enacted at ORS § 166.267. (An "unfinished frame or receiver," while not itself a firearm, may be used in the manufacture of a firearm.) The two principal exceptions to this ban (1) allow a firearms dealer to sell an unfinished frame or receiver that has been serialized, subject to the recordkeeping requirements that apply to all firearm sales; and (2) permit manufacturers to possess an unfinished frame or receiver that will be serialized as part of the manufacturing process. HB 2005-C, § 5, enacted at ORS § 166.267(1)(a), (2)(a). Put simply, HB 2005 makes it a crime to sell, transfer, or possess an unfinished frame or receiver that lacks a serial number.

20. The provisions of HB 2005 that Plaintiffs challenge take effect on September 1, 2024.

**B.   House Bill 2005 Violates Plaintiffs' Second Amendment Protected Rights.**

21. Defendants' enforcement of the provisions at issue in HB 2005 will inflict irreparable harm upon Plaintiffs Montgomery, Holdway, and Walters, as well as FPC and OFF's similarly situated Oregon-resident members because: (i) the Bans infringe their Second Amendment protected right to possess arms, most notably those in common use for lawful purposes; and (ii) the Bans infringe their Second Amendment protected right to self-manufacture such arms for lawful purposes.

22. As described above, each of the Individual Plaintiffs lawfully own arms or NFOs that fall within Oregon's Bans. As a result, Plaintiffs must dispossess themselves of, render permanently inoperable, or (where applicable) serialize their property before September 1, 2024, or risk criminal sanctions. Plaintiffs will also be harmed by Defendants' enforcement of the Bans, which will extinguish any legal market for the regulated items.

23. The Second Amendment protects ancillary rights that are necessary to the exercise of the individual right to "possess a firearm for self-defense" including "'the ability to acquire

arms.'" *Teixeira v. County of Alameda*, 873 F.3d 670, 677–78 (9th Cir. 2017) (quoting *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011)); *Drummond v. Robinson Township*, 9 F.4th 217, 227 (3d Cir. 2021) (the Second Amendment "'implies a corresponding right to acquire and maintain proficiency' with common weapons" (quoting *Ezell*)). Certainly nothing within the plain text of the Second Amendment limits the manner of arms acquisition—*i.e.*, limiting it to the purchase or acquisition from a third party. *See Teixeira*, 873 F.3d at 679 (the right "to keep" arms "necessarily involves" the right to "'keep them in a state of efficiency for use'" and "'to keep them in repair,'" which implies the right to self-repair (quoting *Andrews v. State*, 50 Tenn. 165, 178 (1871))).

24. These principles confirm that Plaintiffs' proposed course of conduct—to manufacture arms, possess the materials necessary to do so, and to keep and bear self-manufactured arms—is covered by the Second Amendment's text. The right to self-manufacture "wouldn't mean much" without the right to own, possess, and use the items and materials necessary to engage in such activity—and, of course, the firearms ultimately produced, so long as such firearms are themselves protected by the Second Amendment and not subject to prohibition. *See Teixeira v. Cnty. Of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) (quoting *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011). As one district court has explained,

> [T]he right to keep and bear arms implies a corresponding right to manufacture arms. Indeed, the right to keep and bear arms would be meaningless if no individual or entity could manufacture a firearm. Thus, if possessing untraceable firearms is protected by the Second Amendment, then so too is manufacturing them.

*Rigby v. Jennings*, 630 F. Supp. 3d 602, 615 (D. Del. 2022).

25. Apart from just the right to self-manufacture, the Bans also unconstitutionally infringe the right of ordinary Oregonians to possess constitutionally protected arms. It is clear that "the Second Amendment protects the possession and use of weapons that are 'in common use at the time.'" *Bruen*, 597 U.S. at 21 (quoting *Heller*, 554 U.S. at 627). *Heller* and *Bruen* establish the historical rule of decision for all arms-ban cases: arms that are "in common use" are absolutely protected and cannot be banned, a conclusion that is "fairly supported by the historical tradition of

prohibiting the carrying of 'dangerous and unusual weapons.'" *See Heller*, 554 U.S. at 627. And because the firearms subject to the Oregon's Bans are "arms" "in common use" for lawful purposes, they are presumptively protected by the Second Amendment's "'unqualified command.'" *Bruen*, 597 U.S. at 17 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10).

26. Oregon must therefore "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 597 U.S. at 24. In other words, it is the government's burden to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19 (cleaned up); *see also id.* at 60 ("[W]e are not obliged to sift the historical materials for evidence to sustain [the State's] statute. That is respondents' burden."). Oregon cannot do so. There is a rich tradition throughout the Nation's history in favor of self-built arms.

27. Throughout American history, people have been free to personally manufacture, construct, and/or assemble arms for lawful purposes, including self-defense in the home. Manufacturing of firearms was not just common, but was entirely unregulated during our Colonial and Founding Eras, and there were no restrictions on who could be a gunsmith or manufacture arms. *See, e.g.*, *Letter from Sec'y of State Thomas Jefferson to George Hammond, British Ambassador to the U.S.*, (May 15, 1793), in 7 THE WRITINGS OF THOMAS JEFFERSON 325, 326 (Paul Ford ed., 1904) ("Our citizens have always been free to make, vend, and export arms. It is the constant occupation and livelihood of some of them."). "Since the earliest colonial days, Americans have been busily manufacturing and repairing arms." Joseph Greenlee, *The American Tradition of Self-Made Arms*, 54 ST. MARY'S L.J. 36 (2023). "Meanwhile, restrictions on self-made arms have been rare throughout American history." *Id.* In fact, "[a]ll restrictions on arms built for personal use have emerged within the last decade, and from only a few states." *Id.*

28. And the federal government, for all of its recent efforts at expanding firearm regulation, has never blocked the ability of law-abiding citizens to self-manufacture firearms for personal use. This is true even if the firearm is built using an unfinished frame or receiver, a 3D-printed frame or receiver, machined from a block of raw materials, or stamped from a piece of

sheet metal. *See* Bureau Of Alcohol, Tobacco, Firearms, and Explosives, *What is ATF doing in regards to people making their own firearms* (May 14, 2015), https://bit.ly/4a85mB0 ("An individual may generally make a firearm for personal use."); William J. Krouse, *Gun Control: 3D-Printed AR-15 Lower Receivers*, Cong. Res. Serv. Insight, 2 (Aug. 22, 2018), https://bit.ly/4a9lEcW ("In short, unfinished receivers and the components needed to build fully functional AR-15s and other firearms are legally available on the U.S. civilian gun market and can be purchased without a background check under federal law."); *see also*, *e.g.*, 18 U.S.C. § 922(a)(1)(a); Final Rule, Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24652, 24686–87 (April 26, 2022) (effective August 24, 2022) ("This rule does not restrict law-abiding citizens' ability to make their own firearms from parts for self-defense or other lawful purposes.").

29. Federal law also does not require NFOs (such as "unfinished frames or receivers"), or the self-built firearms manufactured from them, to be serialized. 87 Fed. Reg. at 24670 ("There are also no recordkeeping requirements imposed by the GCA [Gun Control Act] or the proposed or final rule upon unlicensed persons who make their own firearms, but only upon licensees who choose to take PMFs [Privately Made Firearms] into inventory."). Federal law only requires that "[l]icensed importers and licensed manufacturers shall identify by means of a serial number engraved or cast on the receiver or frame of the weapon . . . each firearm imported or manufactured by such importer or manufacturer." 18 U.S.C. § 923(i); *see also* 27 C.F.R. §§ 478.92 (similar, and also requiring federal firearms licensees to mark and record PMFs when they are received or acquired into inventory). No history or precedent exists for extinguishing law-abiding citizens' ability to self-manufacture firearms for lawful purposes, or for prohibiting law-abiding citizens from possessing NFOs to that end. To the contrary, the "principles that underpin the Nation's regulatory tradition," *United States v. Rahimi*, 144 S. Ct. 1889, 1898 (2024), establish that individuals must remain free to self-manufacture firearms for lawful purposes. In short, the Second Amendment's text as informed by history firmly establishes the right to self-manufacture firearms

and to possess and use the items and materials necessary to construct such arms for lawful purposes.

## CLAIM FOR RELIEF

## VIOLATION OF 42 U.S.C. § 1983

### (SECOND AND FOURTEENTH AMENDMENTS)

30. Plaintiffs incorporate here by reference paragraphs 1 through 29, *supra*, as if fully set forth herein.

31. For the reasons set forth above, Oregon's Bans violate the Second and Fourteenth Amendments.

32. Because Plaintiffs' proposed course of conduct is covered by the Second Amendment's plain text, it the Constitution "presumptively protects" their conduct. *Bruen*, 597 U.S. at 24.

33. It is thus the State's burden to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19; *see also id.* at 60 ("[W]e are not obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden.").

34. Oregon cannot meet this burden. There is no well-established and representative historical tradition of banning the self-manufacture of arms that are in common use for lawful purposes or banning the self-manufacture of such arms.

35. Accordingly, HB 2005's prohibitions on the sale, transfer, and possession of "undetectable" firearms, unserialized firearms, and certain unserialized NFOs violate the Second Amendment.

36. Oregon's Bans inflict irreparable harm on Plaintiffs by infringing on their Second Amendment protected rights. Plaintiffs lack an adequate remedy at law for this constitutional violation and, therefore, injunctive relief is appropriate.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs respectfully request:

1. That this Court issue a declaratory judgment that HB 2005's prohibitions on (1) the manufacture, importation, sale, transfer, or possession of a so-called "undetectable" firearm; (2) the sale, transfer, or possession of an unserialized firearm; and (3) the importation, sale, transfer, or possession of an unserialized "unfinished frame or receiver" are unconstitutional under the Second and Fourteenth Amendments to the United States Constitution.

2. That this Court issue a preliminary and permanent injunction enjoining Defendants, Defendants' officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with Defendants from enforcing HB 2005's prohibitions on (1) the manufacture, importation, sale, transfer, or possession of a so-called "undetectable" firearm; (2) the sale, transfer, or possession of an unserialized firearm; and (3) the importation, sale, transfer, or possession of an unserialized "unfinished frame or receiver" against Plaintiffs and Plaintiffs Firearms Policy Coalition's and Oregon Firearm Federation's similarly situated members in Oregon in a manner that impedes or would impede the exercise of their rights guaranteed under the Second and Fourteenth Amendments to the United States Constitution.

3. That this Court award costs of suit, including reasonable attorneys' fees under 42 U.S.C. § 1988 and any other applicable law, and all further relief to which Plaintiffs may be justly entitled.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Dated: August 5, 2024

/s/ Leonard W. Williamson
Leonard W. Williamson
Oregon State Bar No. 910020
Van Ness Williamson LLP
960 Liberty St. SE, Suite 100
Salem, Oregon 97302
(503) 365-8800
l.williamson@vwllp.com

Respectfully submitted,

Bradley Benbrook*
California Bar No. 177786
Stephen M. Duvernay*
California Bar No. 250957
Benbrook Law Group, PC
701 University Avenue, Suite 106
Sacramento, California 95825
(916) 447-4900
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com

*Pro hac vice applications to be submitted

Attorneys for Plaintiffs