Leonard W. Williamson, OSB #910020
VAN NESS WILLIAMSON LLP
960 Liberty St. SE, Suite 100
Salem, Oregon  97302
(503) 365-8800
l.williamson@vwllp.com

Bradley A. Benbrook*
Stephen M. Duvernay*
BENBROOK LAW GROUP, PC
701 University Avenue, Suite 106
Sacramento, California  95825
(916) 447-4900
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com

*Pro hac vice applications to be submitted

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| DALLIN MONTGOMERY; NICK HOLDWAY; KEVIN WALTERS; OREGON FIREARMS FEDERATION, INC.; and FIREARMS POLICY COALITION, INC.,<br><br>             Plaintiffs,<br><br>    v.<br><br>ELLEN ROSENBLUM, in her Official Capacity as Oregon Attorney General; and CASEY CODDING, in his Official Capacity as Superintendent of the Oregon State Police,<br><br>             Defendants. | Case No.:  3:24-cv-01273-AN<br><br>**NOTICE OF MOTION AND MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**<br><br>**EXPEDITED HEARING AND ORAL ARGUMENT REQUESTED**<br><br>**RELIEF REQUESTED BEFORE SEPTEMBER 1, 2024** |

To the Parties and Their Attorneys of Record:

Please take notice that Plaintiffs Dallin Montgomery; Nick Holdway; Kevin Walters; Oregon Firearms Federation; and Firearms Policy Coalition, Inc. will and hereby do move the Court for a temporary restraining order and/or preliminary injunction.

Plaintiffs respectfully request a temporary restraining order and/or preliminary injunction enjoining Defendants, or any other person or entity acting in concert with them or under the authority of the State of Oregon, from enforcing the provisions in ORS §§ 166.265, .266, and .267 as amended or enacted by House Bill 2005 (2023 Reg. Sess.) as follows:

- ORS § 166.265(1)(a)-(b) (providing that "[a] person may not knowingly manufacture or cause to be manufactured within this state, import into this state, or offer for sale, sell or transfer, an undetectable firearm," and classifying such an offense as a Class B felony);

- ORS § 166.265(2)(a)-(b) (providing that "[a] person may not knowingly possess an undetectable firearm," and classifying such an offense as either a Class A misdemeanor or Class B felony);

- ORS § 166.266(1)(a), (3)(a)-(d) (providing that "[a] person may not knowingly offer for sale, sell or transfer a firearm unless the firearm has been imprinted with a serial number by a federally licensed firearm manufacturer, importer or dealer, or a gunsmith with a federal firearms license, in accordance with federal law," and classifying such an offense as either a Class B felony or a Class A misdemeanor);

- ORS § 166.266(1), (3) (providing that "[a] person may not knowingly possess a firearm unless the firearm has been imprinted with a serial number by a federally licensed firearm manufacturer, importer or dealer, or a gunsmith with a federal firearms license, in accordance with federal law," and classifying such an offense as either a Class B violation, a Class A misdemeanor, or a Class B felony);

- ORS § 166.267(1)(a), (1)(b), (providing that "[a] person may not knowingly import into this state, offer for sale, sell or transfer an unfinished frame or receiver" unless

they are a federal firearms licensee, the frame or receiver is serialized, and the licensee maintains records of the frame or receiver in accordance with federal law generally applicable to firearms; and classifying such an offense as either a Class B felony or a Class A misdemeanor);

- ORS § 166.267(1)(a), (b) (providing that "[a] person may not knowingly import into this state, offer for sale, sell or transfer an unfinished frame or receiver," and unless they are a federally licensed firearm dealer, the frame or receiver is serialized, and the dealer maintains records relating to the frame or receiver as required for firearms generally, and classifying such an offense as either a Class B violation, a Class A misdemeanor, or a Class B felony); and

- ORS § 166.267(1)(a), (2)(a) (providing that "[a] person may not knowingly import into this state, offer for sale, sell or transfer an unfinished frame or receiver," and that "[a] person may not knowingly possess an unfinished frame or receiver that is not serialized" unless they are a federally licensed gun manufacturer and the frame or receiver will be serialized in the manufacturing process, and classifying such an offense as either a Class B violation, a Class A misdemeanor, or a Class C felony).

Plaintiffs seek this relief on the grounds that the above-identified statutory provisions violate the Second Amendment to the United States Constitution.

**Immediate relief is necessary, as these provisions take effect on September 1, 2024.**

This motion shall be based on this notice of motion and motion, the memorandum of points and authorities in support, the declarations and evidence filed concurrently herewith, and upon any further matters the Court deems appropriate.

Respectfully submitted,

Dated: August 7, 2024                          Respectfully submitted,

/s/ Leonard W. Williamson
Leonard W. Williamson                          Bradley Benbrook*
Oregon State Bar No. 910020                    California Bar No. 177786
Van Ness Williamson LLP                        Stephen M. Duvernay*
960 Liberty St. SE, Suite 100                  California Bar No. 250957
Salem, Oregon 97302                            Benbrook Law Group, PC
(503) 365-8800                                 701 University Avenue, Suite 106
l.williamson@vwllp.com                         Sacramento, California 95825
                                               (916) 447-4900
                                               brad@benbrooklawgroup.com
                                               steve@benbrooklawgroup.com


                                               *Pro hac vice applications to be submitted

                                               Attorneys for Plaintiffs

Leonard W. Williamson, OSB #910020
Van Ness Williamson LLP
960 Liberty St. SE, Suite 100
Salem, Oregon  97302
(503) 365-8800
l.williamson@vwllp.com

Bradley A. Benbrook*
Stephen M. Duvernay*
Benbrook Law Group, PC
701 University Avenue, Suite 106
Sacramento, California  95825
 (916) 447-4900
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com

*Pro hac vice applications to be submitted

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| DALLIN MONTGOMERY; NICK HOLDWAY; KEVIN WALTERS; OREGON FIREARMS FEDERATION, INC.; and FIREARMS POLICY COALITION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ELLEN ROSENBLUM, in her Official Capacity as Oregon Attorney General; and CASEY CODDING, in his Official Capacity as Superintendent of the Oregon State Police, <br><br> Defendants. | Case No.:  3:24-cv-01273-AN <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION** <br><br> **EXPEDITED HEARING AND ORAL ARGUMENT REQUESTED** <br><br> **RELIEF REQUESTED BEFORE SEPTEMBER 1, 2024** |

# TABLE OF CONTENTS

I.    INTRODUCTION .........................................................................................................1

II.   STATEMENT OF THE CASE.....................................................................................2

      A.    House Bill 2005 Bans The Sale And Possession Of "Undetectable"
            Firearms, Unserialized Firearms, And Unserialized Non-Firearm Objects........2

      B.    House Bill 2005's Impact On Plaintiffs' Second Amendment Protected
            Rights ................................................................................................................3

III.  NOTICE TO DEFENDANTS ......................................................................................4

IV.   ARGUMENT ................................................................................................................5

      A.    Standard for Temporary Restraining Order or Preliminary Injunction ..............5

      B.    Plaintiffs Are Likely To Succeed On The Merits Of Their Second
            Amendment Claim.............................................................................................6

            1.    The Second Amendment's Plain Text Covers Plaintiffs' Conduct ........6

            2.    Oregon Cannot Show That Its Bans Are Consistent With The
                  Nation's Historical Tradition Of Firearms Regulation ..........................7

      C.    Plaintiffs, Along With FPC's and OFF's Similarly-Situated Members,
            Will Suffer Irreparable Harm If The Bans Are Not Enjoined ............................9

      D.    The Other Factors Favor Immediate Injunctive Relief .....................................11

      E.    The Court Should Waive Bond or Require Only Nominal Security ..................12

V.    CONCLUSION............................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Alliance for the Wild Rockies v. Cottrell,*
  632 F.3d 1127 (9th Cir. 2011) ........................................................................... 5

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles,*
  559 F.3d 1046 (9th Cir. 2009) ........................................................................... 5

*Andrews v. State,*
  50 Tenn. 165 (1871) ............................................................................................ 6

*Baird v. Bonta,*
  81 F.4th 1036 (9th Cir. 2023) ..................................................................... 6, 9, 11

*Barahona-Gomez v. Reno,*
  167 F.3d 1228 (9th Cir. 1999) ......................................................................... 12

*Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics,*
  29 F.4th 468 (9th Cir. 2022) ........................................................................... 11

*Cal. Pharmacists Ass'n v. Maxwell-Jolly,*
  563 F.3d 847 (9th Cir. 2009) ........................................................................... 10

*Cal. Trucking Ass'n v. Becerra,*
  433 F. Supp. 3d 1154 (S.D. Cal. 2020)........................................................... 10

*California v. Azar,*
  911 F.3d 558 (9th Cir. 2018) ............................................................................. 5

*District of Columbia v. Heller,*
  554 U.S. 570 (2008)....................................................................................... 1, 7

*Drummond v. Robinson Township,*
  9 F.4th 217 (3d Cir. 2021) ................................................................................. 6

*Duncan v. Becerra,*
  265 F. Supp. 3d 1106 (S.D. Cal. 2017)............................................................. 9

*E. Bay Sanctuary Covenant v. Biden,*
  993 F.3d 640 (9th Cir. 2021) ........................................................................... 11

*Ezell v. City of Chicago,*
  651 F.3d 684 (7th Cir. 2011) .......................................................................... 6, 7

*Junior Sports Mags. Inc. v. Bonta,*
  80 F.4th 1109 (9th Cir. 2023) ................................................................... 5, 6, 11

*Konigsberg v. State Bar of Cal.,*
  366 U.S. 36 (1961)............................................................................................. 7

*Koons v. Reynolds,*
  649 F. Supp. 3d 14 (D. N.J. 2023) ................................................................... 10

*McDonald v. City of Chicago,*
  561 U.S. 742 (2010)..................................................................................... 1, 10

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
  597 U.S. 1 (2022)..................................................................................... passim

*Nken v. Holder,*
  556 U.S. 418 (2009)......................................................................................... 11

*Pac. Kidney & Hypertension, LLC v. Kassakian*,
  156 F. Supp. 3d 1219 (D. Or. 2016) ............................................................ 5

*Rigby v. Jennings*,
  630 F. Supp. 3d 602 (D. Del. 2022)............................................................. 7

*Rodriguez v. Robbins*,
  715 F.3d 1127 (9th Cir. 2013) ................................................................. 12

*Save Our Sonoran, Inc. v. Flowers*,
  408 F.3d 1113 (9th Cir. 2005) ................................................................. 12

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*,
  240 F.3d 832 (9th Cir. 2001) ..................................................................... 5

*Teixeira v. County of Alameda*,
  873 F.3d 670 (9th Cir. 2017) ................................................................. 6, 7

*United States v. Rahimi*,
  144 S. Ct. 1889 (2024).............................................................................. 9

*Univ. of Texas v. Camenisch*,
  451 U.S. 390 (1981)................................................................................ 11

*VanDerStok v. Garland*,
  633 F. Supp. 3d 847 (N.D. Tex. 2022) .................................................... 10

*Video Gaming Techs., Inc. v. Bureau of Gambling Control*,
  356 F. App'x 89 (9th Cir. 2009) ............................................................. 11

*Winter v. Natural Res. Defense Council, Inc.*,
  555 U.S. 7 (2008).................................................................................... 5

**Statutes**

18 U.S.C. § 922(a)(1)(a) ............................................................................. 8

18 U.S.C. § 923(i) ...................................................................................... 9

ORS § 166.210(17) & (18) ......................................................................... 3

ORS § 166.265 ........................................................................................... 3

ORS § 166.266 ........................................................................................... 3

ORS § 166.267 ........................................................................................... 3

ORS § 166.267(1)(a), (2)(a)........................................................................ 3

**Other Authorities**

Bureau Of Alcohol, Tobacco, Firearms, and Explosives,
  *What is ATF doing in regards to people making their own firearms* (May 14, 2015),
  https://bit.ly/4a85mB0 ............................................................................. 8

Joseph Greenlee,
  *The American Tradition of Self-Made Arms*, 54 St. Mary's L.J. 36 (2023) ............................ 8

*Letter from Sec'y of State Thomas Jefferson to George Hammond, British Ambassador to the
  U.S.*, (May 15, 1793), in 7 The Writings of Thomas Jefferson 325 (Paul Ford ed., 1904).. 8

William J. Krouse,
  *Gun Control: 3D-Printed AR-15 Lower Receivers*, Cong. Res. Serv. Insight (Aug. 22, 2018),
  https://bit.ly/4a9lEcW ............................................................................. 8

**Regulations**

27 C.F.R. §§ 478.92 .................................................................................................................. 9

Final Rule, Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg.
    24652, 24686–87 (April 26, 2022) ..................................................................................... 8

**Constitutional Provisions**

U.S. CONST. amend. II ............................................................................................................. 1

## I.  INTRODUCTION

The Second Amendment to the U.S. Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. The Amendment guarantees "an individual right to keep and bear arms," which is "a fundamental constitutional right guaranteed to the people." *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008). The Second Amendment is applicable to the States through the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010) (incorporating through Substantive Due Process); *id.* at 805 (Thomas, J., concurring) (incorporating through the Privileges or Immunities Clause). Indeed, "[t]he very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is *really worth* insisting upon." *Heller*, 554 U.S. at 634.

In 2023, Oregon enacted House Bill 2005 ("HB 2005"), which among other things bans (1) the manufacture, importation, sale, transfer, or possession of so-called "undetectable" firearms; (2) the sale, transfer, or possession of an unserialized firearm; and (3) the importation, sale, transfer, or possession of an unserialized unfinished frame or receiver (collectively, "the Bans" or "Oregon's Bans"). The net effect of HB 2005 is to criminalize the core aspects of the self-manufacture of firearms.

The Bans are unconstitutional and cannot stand. When, as here, "the Second Amendment's plain text covers an individual's conduct"—manufacturing arms, possessing the materials necessary to do so, and ultimately keeping and bearing such self-manufactured arms—"the Constitution presumptively protects that conduct. To justify its regulation, the government . . . must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022). Oregon cannot meet its burden to justify the Bans because they run directly counter to the Nation's historical tradition of firearm regulation.

Throughout American history, people have been free to personally manufacture, construct, and/or assemble arms for lawful purposes, including self-defense in the home. In defiance of this historical tradition, Oregon's Bans completely and categorically prohibit individuals who are not prohibited from exercising their Second Amendment protected rights from possessing, acquiring, and self-manufacturing firearms that are of types, functions, and designs, and are themselves, commonly owned and possessed firearms—self-made firearms that do not bear a manufacturer's serial number, as well as the component parts used to build such arms—by law-abiding citizens for lawful purposes.

**Immediate relief is necessary because the Bans are scheduled to take effect on September 1, 2024.** Plaintiffs Dallin Montgomery, Nick Holdway, and Kevin Walters, all Oregon citizens and members of Organizational Plaintiffs Firearms Policy Coalition, Inc. ("FPC") and Oregon Firearms Federation ("OFF"), together with similarly situated Oregon-resident FPC and OFF members, face imminent and irreparable harm as a result of the Bans. Because these provisions of HB 2005 infringe a constitutionally protected right, they will soon cause Plaintiffs irreparable harm that no public interest can justify. Plaintiffs thus respectfully ask this Court to preliminarily enjoin Defendants from enforcing the challenged provisions.

## II.  STATEMENT OF THE CASE

A.    **House Bill 2005 Bans The Sale And Possession Of "Undetectable" Firearms, Unserialized Firearms, And Unserialized Non-Firearm Objects.**

In 2023, Oregon enacted HB 2005, which in relevant part effectively bans the sale and possession of what it terms "undetectable" firearms, unserialized firearms, and certain unserialized non-firearm objects ("NFO"). The bill provides the following definitions:

> "Undetectable firearm" means a firearm:
> (a) Constructed or produced, including through a three-dimensional printing process, entirely of nonmetal substances;
> (b) That, after removal of grips, stocks and magazines, is not as detectable as a security exemplar by a walk-through metal detector calibrated to detect the security exemplar; or
> (c) That includes a major component that, if subjected to inspection by the types of X-ray machines commonly used at airports, would not generate an image that accurately depicts the shape of the component.

"Unfinished frame or receiver" means a forging, casting, printing, extrusion, machined body or similar item that:
(A) Is designed to or may readily be completed, assembled or otherwise converted to function as a frame or receiver; or
(B) Is marketed or sold to the public to be completed, assembled or otherwise converted to function as a frame or receiver.

HB 2005-C, § 1, enacted at ORS § 166.210(17) & (18).

The bill makes it a felony to manufacture, import, offer for sale, sell, or transfer an undetectable firearm, and makes possession of an undetectable firearm a misdemeanor. HB 2005-C, § 3, enacted at ORS § 166.265.

HB 2005 also makes it a crime to offer for sale, sell, transfer, or possess an unserialized firearm. HB 2005-C, § 4, enacted at ORS § 166.266.

The bill generally criminalizes the import, offer for sale, sale, transfer, and possession of an "unfinished frame or receiver." HB 2005-C, § 5, enacted at ORS § 166.267. (An "unfinished frame or receiver," while not itself a firearm, may be used in the manufacture of a firearm.) The two principal exceptions to this ban (1) allow a firearms dealer to sell an unfinished frame or receiver that has been serialized, subject to the recordkeeping requirements that apply to all firearm sales; and (2) permit manufacturers to possess an unfinished frame or receiver that will be serialized as part of the manufacturing process. HB 2005-C, § 5, enacted at ORS § 166.267(1)(a), (2)(a). Put simply, HB 2005 makes it a crime to sell, transfer, or possess an unfinished frame or receiver that lacks a serial number.

The provisions of HB 2005 that Plaintiffs challenge take effect on September 1, 2024.

**B.    House Bill 2005's Impact On Plaintiffs' Second Amendment Protected Rights.**

Each of the Individual Plaintiffs are ordinary, law-abiding Oregon citizens that lawfully own arms or NFOs that fall within Oregon's Bans. Specifically, Plaintiff Dallin Montgomery possesses an item that falls within HB 2005's definitions of "unfinished frame or receiver" and "undetectable firearm" (an unserialized Glock-style semiautomatic pistol built from a polymer frame). Montgomery Decl., ¶ 7. Plaintiff Nick Holdway possesses multiple items that fall within HB 2005's definitions of "unfinished frame or receiver" and "undetectable firearm," including: an

unserialized Glock-style semiautomatic pistol built from a polymer frame; an unserialized Glock-style polymer frame; an unserialized AR-platform rifle built from an "unfinished frame or receiver"; and an unserialized "unfinished frame or receiver" that he would manufacture into the receiver for an AR-platform rifle. Holdway Decl., ¶ 7. Plaintiff Kevin Walters possesses multiple items that fall within HB 2005's definition of "unfinished frame or receiver" or its definition of "undetectable firearm" (Walters used a 3D printer to manufacture frames for three Glock-style semiautomatic pistols using PLA+ filament). Walters Decl., ¶ 7.

Each of the Individual Plaintiffs is a member of Plaintiffs Firearms Policy Coalition, Inc. ("FPC") and Oregon Firearms Federation ("OFF," collectively with FPC the "Organizational Plaintiffs"). Montgomery Decl., ¶ 3; Holdway Decl., ¶ 3; Walters Decl., ¶ 3; Combs Decl., ¶¶ 6–9; Starrett Decl., ¶¶ 6–9; *see also* Combs Decl., ¶¶ 6–11 (detailing HB 2005's impact on FPC's members); Starrett Decl., ¶¶ 7–14 (detailing HB 2005's impact on OFF's members).

As a result of HB 2005's Bans, the Individual Plaintiffs and Organizational Plaintiffs' other members throughout Oregon must dispossess themselves of, render permanently inoperable, or (where applicable) serialize their property before September 1, 2024, or risk fines up to $6,250 (misdemeanor) or $250,000 (Class B felony) and/or imprisonment up to 10 years. *See* ORS §§ 161.635; 161.605. Each of the Individual Plaintiffs desires and intends to continue to possess their now-prohibited items to further their right of self-defense and for other lawful purposes and, but for HB 2005, each Individual Plaintiff would build or acquire additional arms or items that fall within HB 2005's prohibitions. Montgomery Decl., ¶¶ 6–8; Holdway Decl., ¶¶ 6–8; Walters Decl., ¶¶ 6–8. The Individual Plaintiffs and the Organizational Plaintiffs' members will also be harmed by Defendants' enforcement of the Bans, which will extinguish any legal market for the regulated items.

### III.  NOTICE TO DEFENDANTS

Pursuant to Fed. R. Civ. P. 65, Plaintiffs gave Defendants notice of their intention to seek a temporary restraining order and the nature of the relief they request in this motion. Williamson Decl., ¶¶ 2–8. On the day the case was filed, Plaintiffs' counsel sent a copy of the summons and

complaint to several senior attorneys at the Oregon Department of Justice and its outside counsel to inform them of Plaintiffs' intent to file for a temporary restraining order. Williamson Decl., ¶¶ 2–4. On August 6, Plaintiffs' counsel sent a copy of the case-assignment materials to those same attorneys—and again noted Plaintiffs' intent to seek a temporary restraining order. Williamson Decl., ¶ 5. Plaintiffs' counsel has had further communications with Defendants' counsel to confirm the nature of the relief sought in this motion and to discuss a proposed schedule for briefing and a hearing. Williamson Decl., ¶¶ 6–8.

Plaintiffs' counsel will serve copies of this brief and supporting materials on Defendants' counsel by e-mail immediately after filing. Williamson Decl., ¶ 8.

## IV.  ARGUMENT

### A.    Standard for Temporary Restraining Order or Preliminary Injunction.

"In deciding whether to grant a motion for a temporary restraining order ('TRO'), courts look to substantially the same factors that apply to a court's decision on whether to issue a preliminary injunction." *Pac. Kidney & Hypertension, LLC v. Kassakian*, 156 F. Supp. 3d 1219, 1222 (D. Or. 2016); *see also Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (a court's "analysis is substantially identical for [an] injunction and [a] TRO"). A plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). Alternatively, injunctive relief "is appropriate when a plaintiff demonstrates that serious questions going to the merits [are] raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (ellipsis omitted).

Likelihood of success on the merits is "[t]he most important" factor. *Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1115 (9th Cir. 2023); *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018). If Plaintiffs show that a law is likely unconstitutional, the other three *Winter* factors favor

an injunction. *Junior Sports Mags.*, 80 F.4th at 1115. And because "even a brief deprivation of a constitutional right causes irreparable injury," this Court should act "expeditiously" in ruling on Plaintiffs' motion. *Baird v. Bonta*, 81 F.4th 1036, 1047–48 (9th Cir. 2023).

**B.      Plaintiffs Are Likely To Succeed On The Merits Of Their Second Amendment Claim.**

      To determine whether a firearm regulation is constitutional under *Bruen*, the analysis begins with the question of whether the Second Amendment's plain text covers an individual's conduct; if so, the Constitution presumptively protects that conduct. *See Bruen*, 597 U.S. at 22–24. If that requirement is satisfied, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 24. In other words, it is Oregon's burden to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19 (cleaned up); *see also id.* at 60 ("[W]e are not obliged to sift the historical materials for evidence to sustain [the State's] statute. That is respondents' burden."). Oregon will be unable to meet this burden.

      **1.      The Second Amendment's Plain Text Covers Plaintiffs' Conduct.**

      The Second Amendment protects ancillary rights that are necessary to the exercise of the individual right to "possess a firearm for self-defense" including "'the ability to acquire arms.'" *Teixeira v. County of Alameda*, 873 F.3d 670, 677–78 (9th Cir. 2017) (quoting *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011)); *Drummond v. Robinson Township*, 9 F.4th 217, 227 (3d Cir. 2021) (the Second Amendment "'implies a corresponding right to acquire and maintain proficiency' with common weapons" (quoting *Ezell*)). Certainly nothing within the plain text of the Second Amendment limits the manner of arms acquisition—*i.e.*, limiting it to the purchase or acquisition from a third party. *See Teixeira*, 873 F.3d at 679 (the right "to keep" arms "necessarily involves" the right to "'keep them in a state of efficiency for use'" and "'to keep them in repair,'" which implies the right to self-repair (quoting *Andrews v. State*, 50 Tenn. 165, 178 (1871))).

      These principles confirm that Plaintiffs' proposed course of conduct—to manufacture arms, possess the materials necessary to do so, and to keep and bear self-manufactured arms—is

covered by the Second Amendment's text. The right to self-manufacture "wouldn't mean much" without the right to own, possess, and use the items and materials necessary to engage in such activity—and, of course, the firearms ultimately produced, so long as such firearms are themselves protected by the Second Amendment and not subject to prohibition. *See Teixeira*, 873 F.3d at 677 (quoting *Ezell*, 651 F.3d at 704). As one district court has explained,

> [T]he right to keep and bear arms implies a corresponding right to manufacture arms. Indeed, the right to keep and bear arms would be meaningless if no individual or entity could manufacture a firearm. Thus, if possessing untraceable firearms is protected by the Second Amendment, then so too is manufacturing them.

*Rigby v. Jennings*, 630 F. Supp. 3d 602, 615 (D. Del. 2022).

Apart from just the right to self-manufacture, the Bans also unconstitutionally infringe the right of ordinary Oregonians to possess constitutionally protected arms. It is clear that "the Second Amendment protects the possession and use of weapons that are 'in common use at the time.'" *Bruen*, 597 U.S. at 21 (quoting *Heller*, 554 U.S. at 627). *Heller* and *Bruen* establish the historical rule of decision for all arms-ban cases: arms that are "in common use" are absolutely protected and cannot be banned, a conclusion that is "fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *See Heller*, 554 U.S. at 627. And because the firearms subject to the Oregon's Bans are "arms" "in common use" for lawful purposes, they are presumptively protected by the Second Amendment's "'unqualified command.'" *Bruen*, 597 U.S. at 17 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)).

In sum, Plaintiffs' proposed course of conduct is covered by the Second Amendment's plain text, so the Constitution "presumptively protects" their conduct. *Bruen*, 597 U.S. at 24.

### 2. Oregon Cannot Show That Its Bans Are Consistent With The Nation's Historical Tradition Of Firearms Regulation.

Under *Bruen*, the burden now shifts to Oregon. It must "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 597

U.S. at 24. Oregon cannot do so because there is a rich tradition throughout the Nation's history in favor of self-built arms.

Throughout American history, people have been free to personally manufacture, construct, and/or assemble arms for lawful purposes, including self-defense in the home. Manufacturing of firearms was not just common, it was also entirely unregulated during our Colonial and Founding Eras, and there were no restrictions on who could be a gunsmith or manufacture arms. *See, e.g.*, *Letter from Sec'y of State Thomas Jefferson to George Hammond, British Ambassador to the U.S.*, (May 15, 1793), in 7 THE WRITINGS OF THOMAS JEFFERSON 325, 326 (Paul Ford ed., 1904) ("Our citizens have always been free to make, vend, and export arms. It is the constant occupation and livelihood of some of them."). "Since the earliest colonial days, Americans have been busily manufacturing and repairing arms." Joseph Greenlee, *The American Tradition of Self-Made Arms*, 54 ST. MARY'S L.J. 36 (2023). "Meanwhile, restrictions on self-made arms have been rare throughout American history." *Id.* In fact, "[a]ll restrictions on arms built for personal use have emerged within the last decade, and from only a few states." *Id.*

And the federal government, for all of its recent efforts at expanding firearm regulation, has never blocked the ability of law-abiding citizens to self-manufacture firearms for personal use. This is true even if the firearm is built using an NFO, a 3D-printed frame or receiver, machined from a block of raw materials, or stamped from a piece of sheet metal. *See* Bureau Of Alcohol, Tobacco, Firearms, and Explosives, *What is ATF doing in regards to people making their own firearms* (May 14, 2015), https://bit.ly/4a85mB0 ("An individual may generally make a firearm for personal use."); William J. Krouse, *Gun Control: 3D-Printed AR-15 Lower Receivers*, Cong. Res. Serv. Insight, 2 (Aug. 22, 2018), https://bit.ly/4a9lEcW ("In short, unfinished receivers and the components needed to build fully functional AR-15s and other firearms are legally available on the U.S. civilian gun market and can be purchased without a background check under federal law."); *see also*, *e.g.*, 18 U.S.C. § 922(a)(1)(a); Final Rule, Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24652, 24686–87 (April 26, 2022) (effective August 24,

2022) ("This rule does not restrict law-abiding citizens' ability to make their own firearms from parts for self-defense or other lawful purposes.").

Federal law also does not require NFOs (such as "unfinished frames or receivers"), or the self-built firearms manufactured from them, to be serialized. 87 Fed. Reg. at 24670 ("There are also no recordkeeping requirements imposed by the GCA [Gun Control Act] or the proposed or final rule upon unlicensed persons who make their own firearms, but only upon licensees who choose to take PMFs [Privately Made Firearms] into inventory."). Federal law only requires that "[l]icensed importers and licensed manufacturers shall identify by means of a serial number engraved or cast on the receiver or frame of the weapon . . . each firearm imported or manufactured by such importer or manufacturer." 18 U.S.C. § 923(i); *see also* 27 C.F.R. §§ 478.92 (similar, and also requiring federal firearms licensees to mark and record PMFs when they are received or acquired into inventory). No history or precedent exists for extinguishing law-abiding citizens' ability to self-manufacture firearms for lawful purposes, or for prohibiting law-abiding citizens from possessing NFOs to that end. To the contrary, the "principles that underpin the Nation's regulatory tradition," *United States v. Rahimi*, 144 S. Ct. 1889, 1898 (2024), establish that individuals must remain free to self-manufacture firearms for lawful purposes.

In short, the Second Amendment's text as informed by history firmly establishes the right to self-manufacture firearms and to possess and use the items and materials necessary to construct such arms for lawful purposes.

**C.    Plaintiffs, Along With FPC's and OFF's Similarly-Situated Members, Will Suffer Irreparable Harm If The Bans Are Not Enjoined.**

The stakes here are unquestionably significant for the Individual Plaintiffs and all Oregonians that lawfully acquired items that will soon be subject to HB 2005's unconstitutional provisions. As the Ninth Circuit recently noted in the Second Amendment context, the "deprivation of constitutional rights unquestionably constitutes irreparable injury." *Baird,* 81 F.4th at 1042 (cleaned up); *see also Ezell*, 651 F.3d at 699–700; *Duncan v. Becerra*, 265 F. Supp. 3d 1106, 1135 (S.D. Cal. 2017) ("Loss of . . . the enjoyment of Second Amendment rights constitutes irreparable

injury."); *Koons v. Reynolds*, 649 F. Supp. 3d 14, 42–44 (D. N.J. 2023) (collecting cases holding that Second Amendment deprivations constitute irreparable harm). Holding otherwise would render the Second Amendment "'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" *Bruen*, 597 U.S. at 70 (quoting *McDonald*, 561 U.S. at 780).

Oregon's Bans will irreparably harm Plaintiffs by depriving them of their fundamental right to self-manufacture firearms and to possess the items and materials necessary to do so. Plaintiffs face certain and ongoing deprivations of their Second Amendment protected rights. Each day Defendants' unconstitutional bans are in force, the Individual Plaintiffs, and other ordinary law-abiding citizens who reside in Oregon, including but not limited to other members of FPC and OFF, risk felony prosecution, incarceration (up to 10 years), significant fines (up to $6,250 for misdemeanor offenses and $250,000 for felony offenses), and permanent loss of their Second Amendment rights because they possess items subject to Oregon's Bans. These criminal and civil penalties have a chilling effect on Plaintiffs' constitutionally protected conduct, which likewise constitutes irreparable harm. *Cal. Trucking Ass'n v. Becerra*, 433 F. Supp. 3d 1154, 1169–70 (S.D. Cal. 2020), rev'd on other grounds, 966 F.3d 644 (9th Cir. 2021) (finding irreparable harm where plaintiffs faced the "Hobson's choice" between compliance measures or "the risk of government enforcement actions, as well as criminal and civil penalties") (citation omitted); *VanDerStok v. Garland*, 633 F. Supp. 3d 847, 856–57 (N.D. Tex. 2022) (collecting cases confirming that "the 'chilling effect' on a plaintiff's conduct that 'arises from the threat of imprisonment and civil penalties' [i]s sufficient to establish irreparable harm") (citation omitted).

Furthermore, if Plaintiffs were to comply with the Bans, they would incur real costs—in the value of destroyed or surrendered property, or to modify the items to conform with HB 2005's requirements—that they cannot recover because of sovereign immunity. This harm, too, is irreparable: Money damages are irreparable where a plaintiff can "obtain no remedy in damages against the state because of the Eleventh Amendment." *Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 852 (9th Cir. 2009), vacated on other grounds, 565 U.S. 606 (2012); *see also Video*

*Gaming Techs., Inc. v. Bureau of Gambling Control*, 356 F. App'x 89, 93 (9th Cir. 2009) (holding that "monetary injuries may be irreparable if Eleventh Amendment sovereign immunity will bar a party from ever recovering those damages in federal court"); *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 677 (9th Cir. 2021) (noting that "where parties cannot typically recover monetary damages flowing from their injury," then "economic harm can be considered irreparable").

Rights cannot be unviolated once violated. Chilled behavior cannot be undone. Destroyed property cannot be repaired. Plaintiffs simply seek to maintain the status quo today throughout the litigation to ensure that they are not harmed in a way that cannot be undone should they ultimately prevail on the merits. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.").

In short, Plaintiffs will suffer irreparable harm absent immediate relief.

**D.    The Other Factors Favor Immediate Injunctive Relief**.

Plaintiffs must also show that the balance of equities tips in their favor and that an injunction is in the public interest. *Winter*, 555 U.S. at 20. When the Government is a party, these two factors merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Moreover, when a party "has established likelihood of success on the merits of a constitutional claim—particularly one involving a fundamental right—the remaining *Winter* factors favor enjoining the likely unconstitutional law." *Junior Sports Mags.*, 80 F.4th at 1120. In other words, when, as here, a plaintiff shows likelihood of success on the merits of a constitutional claim, it "tips the merged third and fourth favors decisively in his favor." *Baird*, 81 F.4th at 1042.

Even setting that aside, it is clear that the final two factors tip decisively in Plaintiffs' favor. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 482 (9th Cir. 2022) (citation omitted). And "[t]he government . . . cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Baird*, 81 F.4th at 1042 (quoting *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983)); *see also Rodriguez v. Robbins*, 715

F.3d 1127, 1145 (9th Cir. 2013) (holding that the government "cannot suffer harm from an injunction that merely ends an unlawful practice"). These factors warrant injunctive relief here.

**E.      The Court Should Waive Bond or Require Only Nominal Security.**

Because the State will not suffer monetary hardship and this matter involves a constitutional violation and the public interest, Plaintiffs request that this Court either waive Rule 65(c)'s bond requirement or impose only a nominal bond. *See, e.g.*, *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999) (district court has "discretion as to the amount of security required, if any"); *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005) ("requiring nominal bonds is perfectly proper in public interest litigation").

## V.  CONCLUSION

For the reasons set forth above, the Court should grant the motion and issue a temporary restraining order or preliminary injunction prohibiting enforcement of the challenged provisions of Oregon's HB 2005.

Respectfully submitted,

Dated: August 7, 2024                        Respectfully submitted,

/s/ Leonard W. Williamson
Leonard W. Williamson                        Bradley Benbrook*
Oregon State Bar No. 910020                  California Bar No. 177786
Van Ness Williamson LLP                      Stephen M. Duvernay*
960 Liberty St. SE, Suite 100                California Bar No. 250957
Salem, Oregon 97302                          Benbrook Law Group, PC
(503) 365-8800                               701 University Avenue, Suite 106
l.williamson@vwllp.com                       Sacramento, California 95825
                                             (916) 447-4900
                                             brad@benbrooklawgroup.com
                                             steve@benbrooklawgroup.com


                                             *Pro hac vice applications to be submitted

                                             Attorneys for Plaintiffs