**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Anit K. Jindal, OSB #171086**
AnitJindal@MarkowitzHerbold.com
**Erin N. Dawson, OSB #116334**
ErinDawson@MarkowitzHerbold.com
**MARKOWITZ HERBOLD PC**
1455 SW Broadway, Suite 1900
Portland, OR  97201
Telephone: (503) 295-3085
*Special Assistant Attorneys General for Defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DALLIN MONTGOMERY; NICK HOLDWAY; KEVIN WALTERS; OREGON FIREARMS FEDERATION, INC.; and FIREARMS POLICY COALITION, INC., | Case No. 3:24-cv-01273-AN |
| Plaintiffs, | **DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION** |
| v. | |
| ELLEN ROSENBLUM, in her Official Capacity as Oregon Attorney General; and CASEY CODDING, in his Official Capacity as Superintendent of the Oregon State Police, | |
| Defendants. | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................... 7

BACKGROUND ....................................................................................................... 8

    I.    Federal law has required most firearms to have serial numbers for more than 50 years; it has prohibited undetectable firearms for more than 35. ......................................................... 8

    II.    The Gun Control Act applies to federal licensees; it does not require individuals to serialize privately made firearms. ..................................................................................... 9

    III.    Ghost guns are increasingly used in crimes and pose a threat to homeland security. .. 10

    IV.    H.B. 2005 prohibits unserialized and undetectable firearms. ...................................... 11

    V.    Plaintiffs incorrectly allege that H.B. 2005 violates the Second Amendment.................. 13

LEGAL STANDARD.................................................................................................. 13

ARGUMENT ............................................................................................................. 15

    I.    Plaintiffs are unlikely to succeed on the merits. ......................................................... 15

        A.    The Second Amendment does not protect ghost guns. .................................................. 15

        B.    H.B. 2005 does not prohibit Oregonians from "self-manufacturing" arms protected by the Second Amendment. ........................................................................................... 21

    II.    Plaintiffs are not irreparably harmed. ........................................................................ 21

    III.    The balance of the hardships weighs against an injunction............................................. 22

CONCLUSION.......................................................................................................... 23

# TABLE OF AUTHORITIES

Page(s)

Cases

*Abramski v. United States*,
  573 U.S. 169 (2014) ............................................................................................... 6

*Associated Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*,
  950 F.2d 1401 (9th Cir. 1991) ........................................................................ 19, 20

*Bianchi v. Brown*,
  ___ F.4th ___, No. 21-1255, 2024 WL 3666180 (4th Cir. Aug. 6, 2024) ............... 14

*Black Lives Matter Seattle-King Cnty. v. City of Seattle, Seattle Police Dep't*,
  466 F. Supp. 3d 1206 (W.D. Wash. 2020) .......................................................... 12

*Chalk v. United States Dist. Court for the Cent. Dist. of Cal.*,
  840 F.2d 701 (9th Cir. 1988) .............................................................................. 21

*Coal. for Econ. Equity v. Wilson*,
  122 F.3d 718 (9th Cir. 1997) .............................................................................. 21

*Dahl v. HEM Pharms. Corp.*,
  7 F.3d 1399 (9th Cir. 1993) ............................................................................... 21

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) ..................................................................................... passim

*Drakes Bay Oyster Co. v. Jewell*,
  747 F.3d 1073 (9th Cir. 2014) ............................................................................ 20

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*,
  415 U.S. 423 (1974) ........................................................................................... 12

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.,*
    736 F.3d 1239 (9th Cir. 2013) .................................................................. 12

*Johnson v. Brown,*
    567 F. Supp. 3d 1230 (D. Or. 2021) ................................................... 11, 12

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League,*
    634 F.2d 1197 (9th Cir. 1980) .................................................................. 20

*Maryland v. King,*
    567 U.S. 1301 (2012) ................................................................................ 21

*Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.,*
    896 F.2d 1283 (11th Cir. 1990) ................................................................ 20

*New York State Rifle & Pistol Association, Inc. v. Bruen,*
    597 U.S. 1 (2022) ............................................................................... passim

*Nken v. Holder,*
    556 U.S. 418 (2009) .................................................................................. 12

*Oregon Firearms Fed'n v. Kotek,*
    682 F. Supp. 3d 874 (D. Or. 2023) ............................................... 13, 14, 18

*Pena v. Lindley,*
    898 F.3d 969 (9th Cir. 2018) .............................................................. 20, 21

*Rigby v. Jennings,*
    630 F. Supp. 3d 602 (D. Del. 2022) .......................................................... 18

*S.F. Veteran Police Officers Ass'n v. City & Cnty. of San Francisco,*
    18 F. Supp. 3d 997 (N.D. Cal. 2014) ........................................................ 19

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,*
    240 F.3d 832 (9th Cir. 2001) .............................................................. 11, 12

**Page iii –**   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
                  TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY
                  INJUNCTION

*United States v. Avila,*
   672 F. Supp. 3d 1137 (D. Colo. 2023) ..................................................................... 17

*United States v. Brabham,*
   No. 1:21-cr-00342, 2024 WL 3165467 (M.D. Pa. June 24, 2024) ........................... 17

*United States v. Marzzarella,*
   614 F.3d 85 (3d Cir. 2010) ...................................................................................... 16

*United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown
Caliber Serial No. LW001804,*
   822 F.3d 136 (3d Cir. 2016) ................................................................................... 14

*United States v. Price,*
       F.4th     , No. 22-4609, 2024 WL 3665400 (4th Cir. Aug. 6, 2024) ................. 13, 16, 17

*United States v. Rahimi,*
   602 U.S.     , 144 S. Ct. 1889 (2024) .................................................................. 13, 14

*United States v. Reyna,*
   No. 3:21-cr-00041-RLM-MGG, 2022 WL 17714376 (N.D. Ind. Dec. 15, 2022) .................. 17

*United States v. Sing-Ledezma,*
   *No. 3:23-cr-00823-KC*, 2023 WL 8587869 (W.D. Tex. Dec. 11, 2023) ........................... 17

*United States v. Serrano,*
   651 F. Supp. 3d 1192 (S.D. Cal. 2023) .................................................................... 17

*United States v. Trujillo,*
   670 F. Supp. 3d 1235 (D.N.M. 2023) ...................................................................... 17

*Univ. of Haw. Prof'l Assembly v. Cayetano,*
   183 F.3d 1096 (9th Cir. 1999) ................................................................................ 20

*VanDerStok v. Garland,*
   680 F. Supp. 3d 741 (N.D. Tex.) ................................................................. 8

*Washington v. United States Dep't of State,*
   318 F. Supp. 3d 1247 (W.D. Wash. 2018) ................................................. 9, 15, 16

*Winter v. Nat. Res. Def. Council, Inc.,*
   555 U.S. 7 (2008) ...................................................................................... 12, 19

Statutes

18 U.S.C. § 922(k) ......................................................................................... passim

42 U.S.C. § 1983 ............................................................................................. 11

ORS 166.210 .................................................................................................. 9, 19

ORS 166.265 .................................................................................................. 9

ORS 166.266 .................................................................................................. passim

ORS 166.267 .................................................................................................. passim

Regulations

27 C.F.R. § 478.12(a) ..................................................................................... 10

27 C.F.R. § 478.92(a)(2) ................................................................................ 10

27 C.F.R. § 478.12(c) ..................................................................................... 8

27 C.F.R. § 478.12(c) ..................................................................................... 8

Other Authorities

H.B. 2005 ........................................................................................................ passim

H.R. Rep. No. 116-88 ............................................................................ 8, 15, 21

House Bill 2005 ................................................................................................ 5

*Packing Plastic: How A Federal Ban on 3d Printed Firearms May Protect the Public While*
  *Retaining Constitutionality,*
  21 J. High Tech. L. 70 (2021) .................................................................. 7

*Using Federal Firearm Statutes to Prosecute Domestic Terrorists,*
  71 DOJ J. Fed. L. & Prac. 131 (2023) ...................................................... 7

**Page vi –**    **DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR**
                 **TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY**
                 **INJUNCTION**

## INTRODUCTION

House Bill 2005 (2023) ("H.B. 2005") does two straightforward things. First, it requires that all firearms in Oregon have serial numbers, including those assembled at home. Second, it prohibits firearms that can elude detection by security screening devices. Plaintiffs assert that these measures violate the Second Amendment. They are wrong. The Second Amendment does not establish "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). The Second Amendment applies only to arms that are "in common use" for "lawful purposes like self-defense." *Id.* at 625, 627. Unserialized and undetectable firearms, both of which are often called "ghost guns," do not meet those criteria.

For more than half a century, federal law has required firearms to be sold with serial numbers. A serial number on a firearm does not make it any less suitable for self-defense or any other lawful purpose. Despite that context, plaintiffs offer no evidence suggesting that it is common to own—never mind use—unserialized firearms.

Although unserialized guns are not commonly used for lawful purposes, criminals are rapidly adopting them for unlawful purposes. The number of unserialized firearms recovered at potential crime scenes increased more than 1,000 percent between 2017 and 2021.

Plaintiffs also fail to offer any evidence that undetectable firearms are commonly used for lawful purposes like self-defense. Once again, federal law has long prohibited such firearms. And an undetectable firearm is no better suited to self-defense or other lawful purposes than an ordinary firearm. Indeed, the defining feature of an undetectable firearm is its ability to evade security measures that are common at airports, courthouses, and other sensitive places.

For those reasons, more than half-a-dozen circuit or district courts across the nation have

applied the methodology of *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1

(2022) and rejected challenges like this one.  Simply put, regulating ghost guns is consistent with

the nation's "historical tradition of prohibiting the carrying of dangerous and unusual weapons."

*Heller*, 554 U.S. at 627 (quotation marks and citation omitted).  Plaintiffs are unlikely to succeed

on the merits of their claim, and this Court should deny their motion for a temporary restraining

order.

**BACKGROUND**

**I.      Federal law has required most firearms to have serial numbers for more than 50
        years; it has prohibited undetectable firearms for more than 35.**

The Gun Control Act of 1968 requires persons engaged in the business of importing and

manufacturing firearms to obtain a federal firearms license.  18 U.S.C. § 923(a).  These licensees

are required to mark the firearms they manufacture and import with serial numbers.  18 U.S.C.

§ 923(i).  The Act also prohibits any person from possessing, receiving, or transporting a firearm

that has had its serial number "removed, obliterated, or altered."  18 U.S.C. § 922(k).  The

serialization requirement allows "law enforcement to determine where, by whom, or when" a

firearm was manufactured and "to whom [it was] sold or otherwise transferred."  Bureau of

Alcohol, Tobacco, and Firearms ("ATF"), Final Rule, Definition of "Frame or Receiver" and

Identification of Firearms, 87 Fed. Reg. 24,652 (Apr. 26, 2022).  That, in turn, "helps to fight

serious crime": "When police officers retrieve a gun at a crime scene, they can trace it to the

buyer and consider him as a suspect."  *Abramski v. United States*, 573 U.S. 169, 182 (2014).

The Undetectable Firearms Act has prohibited undetectable firearms for more than 35

years.  Pub. L. No. 100-649 (Nov. 10, 1988), 102 Stat 3816.  That law makes it unlawful to

"manufacture, import, sell, ship, deliver, possess, transfer, or receive any firearm" that is not

"detectable . . . by walk-through metal detectors" or that "does not generate an image that accurately depicts the shape of the component" when scanned by an x-ray machine.  18 U.S.C. § 922(p).

## II.    The Gun Control Act applies to federal licensees; it does not require individuals to serialize privately made firearms.

Federal law does not, however, regulate privately manufactured firearms.  "[P]rivately made firearms . . . , when made for personal use, are not required by the [Gun Control Act] to have a serial number placed on the frame or receiver, making it difficult for law enforcement to determine where, by whom, or when they were manufactured, and to whom they were sold or otherwise transferred[.]"  87 Fed. Reg. 24,652.

Technological advances are making it easier for individuals to privately make firearms. The "ability to create 3D printed firearms with little to no specialized knowledge threatens to increase the volume of 'homemade' guns available, a result not foreseen at the passage of the Gun Control Act."  William A. Raven, Packing Plastic: How A Federal Ban on 3d Printed Firearms May Protect the Public While Retaining Constitutionality, 21 J. High Tech. L. 70, 102 (2021); Angela Walker Woolridge, Using Federal Firearm Statutes to Prosecute Domestic Terrorists, 71 DOJ J. Fed. L. & Prac. 131, 151 (2023) ("Advances in technology—such as 3D printers—allow [privately manufactured firearms] to become easier and less expensive to make than purchasing a complete firearm.").  "Because of the difficulty with tracing illegally sold or distributed [privately manufactured firearms], those firearms are also commonly referred to as 'ghost guns.'"  87 Fed. Reg. 24,652.

In 2022, the ATF promulgated regulations that limit the ability of federally licensed manufacturers to sell unassembled gun parts or kits without serial numbers.  The new regulations define the terms "frame" and "receiver" in the Gun Control Act so that those parts are subject to

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

the Act's serialization requirements.  27 C.F.R. §§ 478.11, 478.12(c)).  Although these

regulations restrict the sale of some unserialized gun kits and parts, they do not prohibit

individuals from making their own unserialized frames and receivers, including with three-

dimensional printers.[1]

### III.    Ghost guns are increasingly used in crimes and pose a threat to homeland security.

Criminal use of ghost guns has increased rapidly.  According to the ATF, "unserialized

firearms are inherently attractive to criminals, and therefore pose a risk to public safety."  87

Fed. Reg. 24,677.  The ATF tracks requests from local law enforcement to trace firearms used in

potential crimes.  From January 1, 2016 through December 31, 2021, law enforcement reported

approximately 45,240 ghost guns recovered from potential crime scenes.  *Id.* at 24,656.  Nearly

half that total were recovered in 2021 alone.  *Id.*  According to a congressional report, ghost guns

"hamstring[] law enforcement's ability to investigate crimes committed with untraceable

weapons."  H.R. Rep. No. 116-88 (2019).[2]

Unserialized and undetectable firearms also pose a threat to homeland security.

According to a congressional report, ghost guns and the "the emergence of functional 3D-printed

guns are a homeland security threat.  Terrorists and other bad actors may seek to exploit the

availability of these weapons for dangerous ends."  *Id.*  Congress also noted that on "April 22,

2019, DHS [the Department of Homeland Security] released an intelligence assessment that

---

[1] An action challenging the validity of the ATF's 2022 rule is presently pending before the United States Supreme Court.  *VanDerStok v. Garland*, 680 F. Supp. 3d 741 (N.D. Tex.), *aff'd in part, vacated in part, remanded*, 86 F.4th 179 (5th Cir. 2023), *cert. granted*, 144 S. Ct. 1390 (2024).  The case concerns the ATF's authority to promulgate the rule, not the constitutionality of the regulations under the Second Amendment.

[2] Available at: https://www.congress.gov/congressional-report/116th-congress/house-report/88/1 (last accessed August 13, 2024).

repeated the warning that ghost guns pose an urgent and evolving threat to the homeland, particularly in the hands of ideologically motivated lone wolf actors." *Id.*  And, that same year, "DHS, the Federal Bureau of Investigation (FBI), and the National Counterterrorism Center (NCTC) released a Joint Intelligence Bulletin . . . warning of the threat stemming from the use of ghost guns by criminal . . . actors and terrorists." *Id.*

Courts have also noted the dangers posed by non-metal guns created with three-dimensional printers.  The Western District of Washington observed that a "gun made from plastic is virtually undetectable in metal detectors and other security equipment intended to promote public safety at airports, sporting events, courthouses, music venues, and government buildings." *Washington v. United States Dep't of State*, 318 F. Supp. 3d 1247, 1261 (W.D. Wash. 2018).

**IV.    H.B. 2005 prohibits unserialized and undetectable firearms.**

In July 2023, Oregon enacted H.B. 2005.  The Bill added three provisions to Oregon Revised Statutes Chapter 166.  The first, ORS 166.265, prohibits the knowing possession, manufacture, importation, sale, or transfer of "undetectable firearms."  An undetectable firearm is a firearm that is "[c]onstructed or produced, including through a three-dimensional printing process, entirely of nonmetal substances" or a firearm that cannot be detected by metal detectors or airport x-ray machines.  ORS 166.210(17).  These provisions are analogous to provisions in the Gun Control Act that prohibit the manufacture and possession of firearms that are not detectable by metal detectors and x-ray machines.  18 U.S.C. § 922(p).  ORS 166.265 went into effect immediately upon passage of H.B. 2005.

Second, ORS 166.266 prohibits the knowing possession, sale, or transfer of a firearm that has not been imprinted with a serial number.  The prohibition does not apply to antique firearms

or any firearm manufactured before 1968.  ORS 166.266(2)(a) & (b).  This provision went into effect immediately upon passage of H.B. 2005, but does not apply to the possession of unserialized firearms before September 1, 2024.  ORS 166.266(3)(d).

Third, ORS 166.267 prohibits the knowing possession, sale, transfer, or importation of an unfinished frame or receiver that has not been imprinted with a serial number.  "Frame" and "receiver" have the meanings given in 27 C.F.R. § 478.12(a): A "frame" is "the part of a handgun . . . that provides housing or a structure for the component . . . designed to hold back the hammer, striker, bolt, or similar primary energized component prior to initiation of the firing sequence"; a "receiver" is "the part of a rifle, shotgun, or projectile weapon other than a handgun . . . that provides housing or a structure for the primary component designed to block or seal the breech prior to initiation of the firing sequence (*i.e.,* bolt, breechblock, or equivalent[.]"

This provision prevents manufacturers from evading the Gun Control Act's serial number requirement by selling unassembled parts kits that allow individuals to assemble fully functional but unserialized firearms.  ORS 166.267 went into effect immediately upon passage of H.B. 2005, but does not apply to the possession of unserialized frames and receivers before September 1, 2024.  ORS 166.267(2)(b).

Both federal law and H.B. 2005 permit individuals to obtain serial numbers for unserialized firearms.  Pursuant to 27 C.F.R. § 478.92(a)(2), federal firearms licensees can imprint privately made firearms with a serial number.  Furthermore, ORS 166.266(2)(e) expressly allows a gunsmith to take "possession of a firearm for the purpose of imprinting the firearm with a serial number in accordance with federal law."  And the offense created by ORS.166.267 contains an exception if "an individual serial number is conspicuously placed on the unfinished frame or receiver in accordance with the procedures for the serialization of a

firearm in 18 U.S.C. § 923(i) and all regulations under the authority of 18 U.S.C. § 923(i)[.]"
ORS 166.267(1)(a)(B).

**V.      Plaintiffs incorrectly allege that H.B. 2005 violates the Second Amendment.**

  Plaintiffs Dallin Montgomery, Nick Holdway, and Kevin Walters purport to possess
firearms that do not have serial numbers.  Montgomery alleges that he possesses an unserialized
pistol with a polymer frame.  (Compl. ¶ 9 (Dkt. 1).)  Holdway alleges that he possesses an
unserialized pistol and rifle, an unserialized and unfinished polymer pistol frame, and an
unserialized rifle receiver.  (*Id.* ¶ 10.)  Walters alleges that he possesses three polymer pistol
frames that he created using a three-dimensional printer.  (*Id.* ¶ 11.)  Montgomery, Holdway, and
Walters are members of plaintiffs Oregon Firearms Federation and Firearms Policy Coalition.
(*Id.* ¶¶ 9-11.)

  Plaintiffs allege that enforcement of H.B. 2005 "will inflict irreparable harm" on them
because they will have to "dispossess themselves of, render permanently in operable, or (where
applicable) serialize" their firearms before September 1, 2024.  (Compl. ¶¶ 21-22.)  They bring a
single claim under 42 U.S.C. § 1983 seeking a declaration that H.B. 2005 violates the Second
Amendment and preliminary and permanent injunctions prohibiting the Attorney General and the
Superintendent of the Oregon State Police from enforcing the law.  (*Id.* ¶¶ 30-36, Prayer for
Relief.)  As discussed below, however, the Second Amendment does not cover undetectable and
unserialized firearms because such dangerous and unusual weapons are not in common use for
lawful purposes like self-defense.

**LEGAL STANDARD**

  In deciding whether to grant a motion for temporary restraining order, courts look to
substantially the same factors that apply to a court's decision on whether to issue a preliminary

injection. *Johnson v. Brown*, 567 F. Supp. 3d 1230, 1237 (D. Or. 2021) (citing *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001)).  A plaintiff seeking a temporary restraining order, like a plaintiff seeking a preliminary injunction, generally must show that: (1) he or she is likely to succeed on the merits; (2) he or she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his or her favor; and (4) an injunction is in the public interest.  *Id.* (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  When the government is a party, courts consider the last two factors together, because the defendants' equities merge with the public interest.  *See Nken v. Holder,* 556 U.S. 418, 435 (2009).  A plaintiff must establish each of the elements.  *Winter,* 555 U.S. at 20–21.  "[T]he rules of evidence do not apply strictly to [temporary restraining order] proceedings." *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013).

A temporary restraining order is never granted as a matter of right; the movant bears the burden of making a "clear showing" on the *Winter* factors.  *Black Lives Matter Seattle-King Cnty. v. City of Seattle, Seattle Police Dep't*, 466 F. Supp. 3d 1206, 1211-12 (W.D. Wash. 2020). Further, the purpose of a temporary restraining order is preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing on the preliminary injunction application, and no longer.  *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty*, 415 U.S. 423, 439 (1974).

## ARGUMENT

**I.      Plaintiffs are unlikely to succeed on the merits.**

      **A.      The Second Amendment does not protect ghost guns.**

The Second Amendment provides that "the right of the people to keep and bear Arms, shall not be infringed."  But "[l]ike most rights, the right secured by the Second Amendment is not unlimited.  From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626.

The "standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24. This standard establishes a "two-step evaluation."  *United States v. Rahimi*, 602 U.S. ___, 144 S. Ct. 1889, 1928 (2024) (Jackson, J., concurring).  First, the Court "must ask whether the Second Amendment's plain text covers the conduct at issue." *United States v. Price*, ___ F.4th ___, ___, No. 22-4609, 2024 WL 3665400, at *3 (4th Cir. Aug. 6, 2024) (*en banc*).  However, if the plain text does not cover the conduct, "that ends the inquiry: the Second Amendment does not apply." *Id.*; *Oregon Firearms Fed'n v. Kotek*, 682 F. Supp. 3d 874, 923 (D. Or. 2023)*, appeal docketed,* No. 23-35479 (9th Cir. July 17, 2023) ("Because this Court finds that the Second Amendment's plain text does not cover [large capacity magazines], [Ballot Measure] 114's restrictions on [large capacity magazines] are constitutional.").

Second, if the conduct is covered, the reviewing court considers "whether the challenged regulation is consistent with the principles that underpin the Nation's regulatory tradition." *Rahimi*, 144 S. Ct. at 1891 (citation omitted).

It is plaintiffs' burden to demonstrate that the plain text of the amendment covers the regulated conduct at the first step. *Oregon Firearms Fed'n*, 682 F. Supp. 3d at 888 (A "plaintiff challenging a firearm regulation must show the plain text of the Second Amendment covers the conduct regulated by the challenged law.") (citation omitted). It is the government's burden to satisfy the second step. *Bruen*, 597 U.S. at 33-34.

Plaintiffs have not met their burden, and they cannot meet it. The Second Amendment does not protect ghost guns. The "arms" covered by the Second Amendment only include weapons "typically possessed by law-abiding citizens for lawful purposes"—in particular, weapons "in common use" for self-defense. *Heller*, 554 U.S. at 624-25. The Second Amendment does not protect "dangerous and unusual weapons." *Id.* at 627 (quotation marks and citation omitted).[3]

Plaintiffs have offered *no* evidence that law-abiding individuals commonly use unserialized or undetectable firearms for lawful purposes. (*See* Mem. of Points and Authorities

---

[3] In addition to ghost guns, courts have identified a variety of dangerous and uncommon weapons that are outside the plain text of the Second Amendment. These include short-barreled shotguns, *Heller*, 554 U.S. at 625 (The "Second Amendment does not protect . . . short-barreled shotguns."), assault rifles, *Bianchi v. Brown*, ___ F.4th ___, ___, No. 21-1255, 2024 WL 3666180, at *17 (4th Cir. Aug. 6, 2024) ("[T]he AR-15 is a combat rifle that is both ill-suited and disproportionate to self-defense. It thereby lies outside the scope of the Second Amendment."), machine guns, *United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial No. LW001804*, 822 F.3d 136, 142 (3d Cir. 2016) ("[T]he Second Amendment does not protect the possession of machine guns. They are not in common use for lawful purposes."), and large capacity magazines. *Oregon Firearms Fed'n*, 682 F. Supp. 3d at 923 (The "Second Amendment's plain text does not cover [large capacity magazines].").

in Supp. of Mot. for T.R.O. and/or Prelim. Injunction ("T.R.O. Mem.") at 16[4] (Dkt. 9) (stating

that firearms subject to H.B. 2005 are in common use for lawful purposes, but offering no

evidence or argument).  They have, consequently, failed to meet their burden to show that the

Second Amendment covers the weapons proscribed by H.B. 2005.  Moreover, it is not

reasonably disputable that the vast majority of privately owned firearms in the United States

were made and sold with serial numbers—as has been required of commercially sold firearms

since 1968.  On this basis alone, the Court should deny plaintiffs' motion for a temporary

restraining order.

Although there is no evidence of common use for lawful purposes, there is ample

evidence that criminals are increasingly using ghost guns to commit crimes.  According to the

ATF, "unserialized firearms are inherently attractive to criminals[.]"  87 Fed. Reg. 24,677.  ATF

data shows a dramatic increase in the number of unserialized firearms linked to potential crimes.

*Id.*  Furthermore, according to a congressional report, terrorists are likely to seek out ghost guns.

H.R. Rep. No. 116-88 (2019) ("Terrorists and other bad actors may seek to exploit the

availability of these weapons for dangerous ends.").  Three-dimensional-printed polymer guns

are "virtually undetectable in metal detectors and other security equipment intended to promote

public safety at airports, sporting events, courthouses, music venues, and government buildings,"

*Washington*, 318 F. Supp. 3d at 1261, leading Congress to declare that "the emergence of

functional 3D-printed guns are a homeland security threat."  H.R. Rep. No. 116-88.

All of this is unsurprising.  The only advantage of unserialized firearms over serialized

firearms is that they frustrate law enforcement efforts to investigate and prosecute crime.  *See* 87

---

[4] Page citations are to the docket header's pagination, not the brief's.

Fed. Reg. 24,652 (Serial numbers allows "law enforcement to determine where, by whom, or when" a firearm was manufactured and "to whom [it was] sold or otherwise transferred."). Otherwise, unserialized "firearms are functionally no different from marked firearms." *United States v. Marzzarella*, 614 F.3d 85, 94 (3d Cir. 2010), *abrogated on other grounds by Range v. Attorney Gen. United States of Am.*, 69 F.4th 96 (3d Cir. 2023), *cert. granted, judgment vac'd*, No. 23-374, 2024 WL 3259661 (U.S. July 2, 2024). Indeed, a firearm without a serial number can have a serial number imprinted on it, as H.B. 2005 expressly allows. ORS 166.266(2)(e), 166.267(1)(a)(B). In this light, there is "no compelling reason why a law-abiding citizen would prefer an unmarked firearm." *Marzzarella*, 614 F.3d at 95. Or, as the *en banc* Fourth Circuit explained:

> "[B]ecause we cannot fathom any common-sense reason for a law-abiding citizen to want to use a firearm with an obliterated serial number for self-defense, and there is no evidence before us that they are nonetheless commonly lawfully used, we conclude that firearms with obliterated serial numbers are not in common use for a lawful purpose and they therefore fall outside the scope of the Second Amendment's protection."

*Price*, 2024 WL 3665400, at *10.

    With respect to undetectable firearms, the situation is similar. The defining advantage of an undetectable firearm over an ordinary firearm is that the former is easier to smuggle into sensitive locations where firearms are prohibited. *Washington*, 318 F. Supp. 3d at 1261. Fundamentally there is no reason that an Oregonian requires an unserialized or undetectable ghost gun to exercise their Second Amendment rights.

    A broad consensus of courts considering this question and applying the *Bruen* standard have reached the same conclusion. At the circuit court level, the Fourth Circuit, sitting *en banc*, concluded that unserialized firearms "fall outside of the scope of the Second Amendment's

protection." *Price* at *11.  Numerous federal districts—in Colorado, New Mexico, California, Texas, Pennsylvania, and Indiana— agree.  *United States v. Avila*, 672 F. Supp. 3d 1137, 1144 (D. Colo. 2023) ("[F]irearms with obliterated serial numbers are not within the class of firearms typically possessed by law-abiding citizens for lawful purposes.  The Court also finds that firearms with an obliterated serial number—like the one Defendant is accused of possessing— are dangerous and unusual weapons and, therefore, not within the scope of the Second Amendment's guarantee."); *United States v. Trujillo*, 670 F. Supp. 3d 1235, 1241 (D.N.M. 2023) ("[F]irearms with removed, obliterated, or altered serial numbers are weapons not typically possessed by law-abiding citizens for lawful purposes[.]" (Quotation marks and citation omitted)); *United States v. Serrano*, 651 F. Supp. 3d 1192, 1210 (S.D. Cal. 2023) ("A law requiring that firearms have serial numbers simply does not infringe a law-abiding citizen's right to keep and bear arms for self-defense and other lawful purposes."); *United States v. Sing-Ledezma*, No. 3:23-cr-00823-KC, 2023 WL 8587869, at *4 (W.D. Tex. Dec. 11, 2023) (Federal law prohibiting removal of serial numbers "prohibits only the possession of highly unusual weapons, it falls outside the ambit of the Second Amendment's protection." (Quotation marks and citation omitted)); *United States v. Brabham*, No. 1:21-cr-00342, 2024 WL 3165467, at *5 (M.D. Pa. June 24, 2024) ("A firearm without a serial number is not necessary for a law-abiding citizen's right to self-defense, which is the conduct at the heart of the Second Amendment."); *United States v. Reyna*, No. 3:21-cr-00041-RLM-MGG, 2022 WL 17714376, at *5 (N.D. Ind. Dec. 15, 2022) ("Guns with obliterated serial numbers belong to those weapons not typically possessed by law-abiding citizens for lawful purposes so possession of such guns isn't within the Second Amendment's scope." (Quotation marks and citation omitted)).

Page 19 –     **DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

The sole district court decision to reach a different result is inapposite and wrongly decided. In *Rigby v. Jennings*, 630 F. Supp. 3d 602, 613 (D. Del. 2022), a Delaware district court found that the Second Amendment "protects the possession of untraceable firearms and unfinished firearms and receivers because its text covers the possession of firearms."

*Rigby* is inapposite because, unlike H.B. 2005, the Delaware law at issue apparently did not provide "any way for Plaintiffs to keep firearms they lawfully manufactured." *Id.* That is not the circumstance here: H.B. 2005 allows Oregonians to have their firearms serialized. ORS 166.266(2)(e) (allowing gunsmith to take "possession of a firearm for the purpose of imprinting the firearm with a serial number in accordance with federal law"); ORS 166.267(1)(a)(B) (providing that prohibition on unfinished frames or receivers does not apply if "an individual serial number is conspicuously placed on the unfinished frame or receiver in accordance with the procedures for the serialization of a firearm" under federal law).

Furthermore, the Delaware district court reached the wrong outcome because it assigned the government the burden of showing that the Second Amendment did *not* cover unserialized firearms, when it should have required plaintiffs to show that it does. *Rigby*, 630 F. Supp. 3d at 614 ("Defendant has failed to provide evidence that persuades the Court that this standard has been met[.]"). As noted above, it is plaintiffs' burden to show that the Second Amendment covers the regulated conduct. *Oregon Firearms Fed'n*, 682 F. Supp. 3d at 888.

The Second Amendment's plain text, as understood in the context of its historical scope, does not cover unserialized or undetectable firearms. Because plaintiffs have not met their burden at the first *Bruen* step, there is no need to consider the second.

     **B.**     **H.B. 2005 does not prohibit Oregonians from "self-manufacturing" arms protected by the Second Amendment.**

Plaintiffs incorrectly frame H.B. 2005 as regulating the "self-manufacturing" of arms.  It does no such thing.  Contrary to plaintiffs' assertions, H.B. 2005 does not prohibit anyone from manufacturing firearms protected by the Second Amendment.  (*See* T.R.O. Mem. at 17.) Oregonians may build guns—from scratch, kits, or three-dimensional printers—so long as they have a serial number engraved on the gun, ORS 166.266(2)(e), 166.267(1)(a)(B), and so long as the gun is not undetectable.  ORS 166.210(17).

**II.**     **Plaintiffs are not irreparably harmed.**

Plaintiffs argue the remaining *Winter* factors favor enjoining the challenged provisions of H.B. 2005.  (T.R.O. Mem. at 20.)  Among other reasons, that argument fails because plaintiffs cannot succeed on the merits of their constitutional claim.  *See Associated Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991); *see also S.F. Veteran Police Officers Ass'n v. City & Cnty. of San Francisco*, 18 F. Supp. 3d 997, 1006 (N.D. Cal. 2014) ("'serious questions' do not translate to a violation severe enough to trigger a presumption of irreparable harm").

Moreover, plaintiffs can continue to build their own guns so long as they place a serial number on the gun, ORS 166.266(2)(e), 166.267(1)(a)(B), and do not construct them in a manner that makes them undetectable.  ORS 166.210(17).  Plaintiffs are also free to retain, purchase, or transfer metal, serialized firearms.

Although plaintiffs can serialize their ghost guns, they assert that they "do not want to incur the cost to serialize these items" and "prefer not to do so because serialization is permanent."  (Decl. of Dallin Montgomery in Supp. of Mot. for T.R.O. and/or Prelim. Injunction (Dkt. 10) ¶ 7; Decl. of Holdway in Supp. of Mot. for T.R.O. and/or Prelim. Injunction (Dkt. 11)

¶ 7; Decl. of Kevin Walters in Supp. of Mot. for T.R.O. and/or Prelim. Injunction (Dkt. 12) ¶ 7.) But plaintiffs' preferences in that regard are not constitutional injuries that support a finding of irreparable harm.  *See generally Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980) ("[M]onetary injury is not normally considered irreparable.")  Although the deprivation of a constitutional right will often constitute an irreparable harm, the same is not true where the plaintiff's injury is largely economic.  *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1286 (11th Cir. 1990) (holding that irreparable injury in constitutional case was lacking when alleged harm "is chiefly, if not completely, economic"); *see also Associated Gen. Contractors of Cal., Inc.*, 950 F.2d at 1412 n.9 (citing *Ne. Fla. Chapter of Ass'n of Gen. Contractors*, 896 F.2d 1283 approvingly but reserving issue).  In sum, plaintiffs have not established irreparable harm with respect to the challenged provisions because their desire to avoid the financial costs of serialization is not an irreparable harm.

## III.    The balance of the hardships weighs against an injunction.

The balance of hardships weighs heavily in defendants' favor.  When the government is a party, the public interest factor merges with the consideration of the balance of the equities.  *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).  "To determine which way the balance of the hardships tips, a court must identify the possible harm caused by the preliminary injunction against the possibility of the harm caused by not issuing it."  *Univ. of Haw. Prof'l Assembly v. Cayetano*, 183 F.3d 1096, 1108 (9th Cir. 1999) (citation omitted).

The Ninth Circuit has held that "preserving the ability of law enforcement to conduct serial number tracing—effectuated by limiting the availability of untraceable firearms—constitutes a substantial or important interest."  *Pena v. Lindley*, 898 F.3d 969, 982 (9th Cir.

2018) (quotation marks and citation omitted).  "Public safety should be considered by a court when granting equitable relief." *Dahl v. HEM Pharms. Corp.*, 7 F.3d 1399, 1404 (9th Cir. 1993) (citing *Chalk v. United States Dist. Court for the Cent. Dist. of Cal.*, 840 F.2d 701, 711 (9th Cir. 1988)).  Preventing criminal and terrorist activity is an important public interest.  Furthermore, "a state suffers irreparable injury whenever an enactment of its people or their representatives is enjoined." *Coal. for Econ. Equity v. Wilson,* 122 F.3d 718, 719 (9th Cir. 1997); *Maryland v. King*, 567 U.S. 1301 (2012) (citation omitted).

On the other side of the balance, the burden on plaintiffs' ability to engage in self-defense is minimal at most and probably nonexistent.  Plaintiffs can continue to "keep and bear arms" while the Court decides the merits of their claims: they can retain any serialized firearms they already possess and they can serialize their unserialized firearms.  ORS 166.266(2)(e), 166.267(1)(a)(B); (Compl. ¶ 22 (noting that plaintiffs can "(where applicable) serialize" their firearms before September 1, 2024)).

Balancing these hardships, the Court should not issue a temporary restraining order. "[U]ntraceable firearms pose a challenge to law enforcement's ability to investigate crimes and [the] 'wide availability of ghost guns and the emergence of functional 3D-printed guns are a homeland security threat.'" 87 Fed. Reg. 24,652 (quoting H.R. Rep. No. 116-88).  The Oregon legislature was right to regulate these dangerous weapons, and the balance of hardships does not favor an injunction.

## CONCLUSION

H.B. 2005 is consistent with the nation's "historical tradition of prohibiting the carrying of dangerous and unusual weapons." *Heller*, 554 U.S. at 627 (quotation marks and citation

omitted).  The Court should deny plaintiffs' motion for a temporary restraining order or preliminary injunction.

DATED:  August 14, 2024.            MARKOWITZ HERBOLD PC


*s/ Harry B. Wilson*
Harry B. Wilson, OSB #077214
HarryWilson@MarkowitzHerbold.com
Anit K. Jindal, OSB #171086
AnitJindal@MarkowitzHerbold.com
Erin N. Dawson, OSB #116334
ErinDawson@MarkowitzHerbold.com
*Special Assistant Attorneys General for Defendants*

2183918