**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Anit K. Jindal, OSB #171086**
AnitJindal@MarkowitzHerbold.com
**Erin N. Dawson, OSB #116334**
ErinDawson@MarkowitzHerbold.com
**MARKOWITZ HERBOLD PC**
1455 SW Broadway, Suite 1900
Portland, OR  97201
Telephone: (503) 295-3085
*Special Assistant Attorneys General for Defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DALLIN MONTGOMERY; NICK HOLDWAY; KEVIN WALTERS; OREGON FIREARMS FEDERATION; and FIREARMS POLICY COALITION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ELLEN ROSENBLUM, in her Official Capacity as Oregon Attorney General; and CASEY CODDING, in his Official Capacity as Superintendent of the Oregon State Police, <br><br> Defendants. | Case No. 3:24-cv-01273-AN <br><br> **DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT** <br><br> Pursuant to Fed. R. Civ. P. 12(b)(6) and 56 <br><br> Request for Oral Argument |

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

LR 7-1 CERTIFICATION ................................................................................................................ 1
INTRODUCTION .......................................................................................................................... 1
MOTIONS ...................................................................................................................................... 1
MEMORANDUM OF LAW IN SUPPORT OF MOTION ........................................................... 2
BACKGROUND ............................................................................................................................ 2
ARGUMENT .................................................................................................................................. 3
    I.    The Court should dismiss plaintiffs' Amended Complaint because the conduct regulated by H.B. 2005 is not protected by the Second Amendment. ....................................................... 3
        A.    The Court must dismiss a complaint that does not allege facts sufficient to state a claim for relief. ................................................................................................................................. 3
        B.    The Second Amendment only protects arms that are in common use for lawful purposes like self-defense. ................................................................................................ 4
        C.    Plaintiffs' Amended Complaint fails to allege facts showing that ghost guns are in common use for self-defense. ........................................................................................... 5
        D.    The Court should dismiss plaintiffs' complaint with prejudice because further amendment would be futile. ............................................................................................ 9
        E.    Regulation of ghost guns also is consistent with the Nation's regulatory tradition as a matter of law. ................................................................................................................ 11
    II.    In the alternative, the Court should grant summary judgment on plaintiffs' claim under Rule 56 because there are no facts showing that ghost guns are commonly used for self-defense. ................................................................................................................................ 13
        A.    The Court must grant summary judgment where plaintiffs fail to make a showing of sufficient evidence to support their claim. .................................................................... 13
        B.    Plaintiffs have not and cannot show any evidence that ghost guns are in common use for self-defense. ............................................................................................................. 14
CONCLUSION ............................................................................................................................ 14

## TABLE OF AUTHORITIES

Page(s)

Cases

*Abramski v. United States*,
    573 U.S. 169 (2014) .......................................................................................................... 10
*Austin v. Univ. of Oregon*,
    925 F.3d 1133 (9th Cir. 2019) ............................................................................................ 6
*Balistreri v. Pacifica Police Dep't*,
    901 F.2d 696 (9th Cir. 1990) .............................................................................................. 3
*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................................ 3, 6
*Bianchi v. Brown*,
    111 F.4th 438 (4th Cir. 2024) ........................................................................................... 11
*Celotex v. Catrett*,
    477 U.S. 317 (1986) .................................................................................................... 13, 14
*Clark v. Cmty. for Creative Non-Violence*,
    468 U.S. 288 (1984) ............................................................................................................ 5
*District of Columbia v. Heller*,
    554 U.S. 570 (2008) .................................................................................................... passim
*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) .............................................................................................. 3
*Marder v. Lopez*,
    450 F.3d 445 (9th Cir. 2006) .............................................................................................. 3
*McGlinchy v. Shell Chem. Co.*,
    845 F.2d 802 (9th Cir. 1988) .............................................................................................. 6
*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
    597 U.S. 1 (2022) ............................................................................................................ 5, 9
*Or. Firearms Fed'n v. Kotek*,
    682 F. Supp. 3d 874 (D. Or. 2023) ................................................................................. 4, 9
*Rutman Wine Co. v. E. & J. Gallo Winery*,
    829 F.2d 729, 738 (9th Cir. 1987) ................................................................................... 11
*Sun Sav. & Loan Ass'n v. Dierdorff*,
    825 F.2d 187 (9th Cir. 1987) .............................................................................................. 3
*United States v. Avila*,
    672 F. Supp. 3d 1137 (D. Colo. 2023) ............................................................................... 8
*United States v. Brabham*,
    No. 1:21-cr-00342, 2024 WL 3165467 (M.D. Pa. June 24, 2024) ..................................... 8
*United States v. James*,
    677 F. Supp. 3d 329 (D.V.I. 2023) ..................................................................................... 5
*United States v. Marzzarella*,
    614 F.3d 85 (3d Cir. 2010) ............................................................................................... 11
*United States v. Price*,
    111 F.4th 392 (4th Cir. 2024) .................................................................................... 4, 8, 11

*United States v. Rahimi*,
    602 U.S. ___, 144 S. Ct. 1889 (2024) ........................................................................... 4, 11
*United States v. Reyna*,
    No. 3:21-cr-00041-RLM-MGG, 2022 WL 17714376 (N.D. Ind. Dec. 15, 2022) ....................... 8
*United States v. Serrano*,
    651 F. Supp. 3d 1192 (S.D. Cal. 2023) ................................................................................ 8
*United States v. Sing-Ledezma*,
    No. 3:23-cr-00823-KC, 2023 WL 8587869 (W.D. Tex. Dec. 11, 2023) .................................. 8
*United States v. Trujillo*,
    670 F. Supp. 3d 1235 (D.N.M. 2023) ................................................................................. 8
*Washington v. United States Dep't of State*,
    318 F. Supp. 3d 1247 (W.D. Wash. 2018) ...................................................................... 9, 10

Statutes

18 U.S.C. § 922(k) ........................................................................................................................ 2
18 U.S.C. § 922(p)(1) ................................................................................................................ 2, 9
18 U.S.C. § 923(a) ........................................................................................................................ 9
18 U.S.C. § 923(i) ..................................................................................................................... 2, 9
44 U.S.C. § 1507 ..................................................................................................................... 4, 10
ORS 166.210(17) .......................................................................................................................... 3
ORS 166.265 ............................................................................................................................. 2, 3
ORS 166.266 ............................................................................................................................. 2, 3
ORS 166.267 ............................................................................................................................. 2, 3
Pub. L. No. 100-649 ..................................................................................................................... 2

Rules

Federal Rule of Civil Procedure 8(a)(2) ....................................................................................... 3
Federal Rule of Civil Procedure 12(b)(6) .............................................................................. 1, 3, 5
Federal Rule of Civil Procedure 56 ......................................................................................... 2, 13

Regulations

87 Fed. Reg. ........................................................................................................................... 9, 10

Other Authorities

1911 Colo. Sess. Laws 408 ......................................................................................................... 12
*Gun Regulation, the Police Power, and the Right to Keep Arms in Early America: The Legal Context of the Second Amendment*,
    25 Law & Hist. Rev. 139 (2007) ........................................................................................ 12
H.B. 2005 ............................................................................................................................. passim
H.R. Rep. No. 116-88 ................................................................................................................. 10

## LR 7-1 CERTIFICATION

As required by Local Rule 7-1(a)(1)(A), counsel for defendants Ellen Rosenblum and Casey Codding made a good faith effort to resolve this dispute by telephone on October 22, 2024. The parties were unable to reach agreement.

## INTRODUCTION

The Second Amendment applies only to arms that are "in common use" for "lawful purposes" like self-defense. *District of Columbia v. Heller*, 554 U.S. 570, 625, 627 (2008). In 2023, Oregon passed House Bill 2005 ("H.B. 2005"), which prohibits unserialized and undetectable firearms, also known as "ghost guns." Because plaintiffs' First Amended Complaint for Declaratory, Injunctive, or Other Relief ("Amended Complaint" or "Am. Compl.") fails to allege that ghost guns are in common use for any lawful purpose, the Second Amendment does not apply, and the Court should dismiss the Amended Complaint with prejudice.

Plaintiffs attempt to elide this unassailable conclusion in their Amended Complaint by adding allegations about the use of semiautomatic handguns and rifles generally. This is misdirection. All that H.B. 2005 requires is that firearms bear serial numbers and be constructed in a way that renders them detectable by security devices. It does not ban semiautomatic handguns or rifles. Plaintiffs' amended allegations are irrelevant to the Second Amendment analysis.

## MOTIONS

Defendants Ellen Rosenblum and Casey Codding, in their official capacities, move the Court under Federal Rule of Civil Procedure 12(b)(6) for an order dismissing with prejudice plaintiffs' Amended Complaint for failure to state any claims upon which relief can be granted.

Page 1 –   DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT
            AND, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

In the alternative, defendants move the Court under Rule 56 for summary judgment on all relief requested in plaintiffs' Amended Complaint.

## MEMORANDUM OF LAW IN SUPPORT OF MOTION

## BACKGROUND

Federal law prohibits unserialized and undetectable firearms. The Gun Control Act of 1968 has required licensed firearms importers and manufacturers to mark their weapons with serial numbers for more than 50 years. 18 U.S.C. § 923(i). The law also prohibits anyone from transporting, shipping, receiving, or possessing a firearm with the serial number removed. 18 U.S.C. § 922(k). The Undetectable Firearms Act has prohibited undetectable firearms for more than 35 years. Pub. L. No. 100-649 (Nov. 10, 1988), 102 Stat 3816. That law makes it unlawful to "manufacture, import, sell, ship, deliver, possess, transfer, or receive any firearm" that is not "detectable . . . by walk-through metal detectors" or that "does not generate an image that accurately depicts the shape of the component" when scanned by an x-ray machine. 18 U.S.C. § 922(p)(1).

Oregon House Bill 2005 (2023) builds on federal law by generally requiring serial numbers on firearms and firearm frames and receivers. ORS 166.266 (generally prohibiting firearms without serial numbers); ORS 166.267 (generally prohibiting unfinished firearm frames and receivers without serial numbers). It also prohibits firearms that are undetectable by security devices such as metal detectors. ORS 166.265 (prohibiting undetectable firearms). Collectively, these laws prohibit firearms and firearm kits known as "ghost guns."

Plaintiffs incorrectly frame H.B. 2005 as regulating the "personal manufactur[ing]" of arms. (Am. Compl. ¶ 2.) It does no such thing. Contrary to plaintiffs' assertions, H.B. 2005 does not prohibit anyone from manufacturing firearms protected by the Second Amendment. Oregonians may build guns—from scratch, kits, or three-dimensional printers—so long as they

Page 2 –   DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT
            AND, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

have a serial number engraved on the gun, ORS 166.266(2)(e), 166.267(2)(a), and so long as the gun is not undetectable.  ORS 166.210(17), 166.265(1).

## ARGUMENT

I. **The Court should dismiss plaintiffs' Amended Complaint because the conduct regulated by H.B. 2005 is not protected by the Second Amendment.**

   A. **The Court must dismiss a complaint that does not allege facts sufficient to state a claim for relief.**

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  The Court should dismiss a complaint when it "fail[s] to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (internal citation omitted).  When considering a motion to dismiss, courts construe factual allegations in the complaint in the plaintiff's favor.  *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir. 1987) (internal citations omitted).  But courts do not accept factual allegations that merely recite the elements of a claim.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up, citations omitted).

"Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint."  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (internal citation omitted).  A court may look beyond the complaint, however, to matters which have been judicially noticed.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir.

Page 3 –   DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

2018) (judicial notice "permit[s] district courts to consider materials outside a complaint"). "The contents of the Federal Register shall be judicially noticed[.]" 44 U.S.C. § 1507.

> **B.  The Second Amendment only protects arms that are in common use for lawful purposes like self-defense.**

The Second Amendment provides that "the right of the people to keep and bear Arms, shall not be infringed."  But "[l]ike most rights, the right secured by the Second Amendment is not unlimited.  From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller,* 554 U.S. at 626 (internal citations omitted).

Second Amendment challenges require courts to perform a "two-step evaluation." *United States v. Rahimi,* 602 U.S. \_\_\_, 144 S. Ct. 1889, 1928 (2024) (Jackson, J., concurring). First, the Court "must ask whether the Second Amendment's plain text covers the conduct at issue." *United States v. Price,* 111 F.4th 392, 398 (4th Cir. 2024) (*en banc*).  If the conduct is not protected, "that ends the inquiry: the Second Amendment does not apply." *Id.* (internal citations omitted); *Or. Firearms Fed'n v. Kotek,* 682 F. Supp. 3d 874, 923 (D. Or. 2023), *appeal docketed,* No. 23-35479 (9th Cir. July 17, 2023) ("Because this Court finds that the Second Amendment's plain text does not cover [large capacity magazines], [Ballot Measure] 114's restrictions on [large capacity magazines] are constitutional.").

If the conduct is covered, the reviewing court considers "whether the challenged regulation is consistent with the principles that underpin [the Nation's] regulatory tradition." *Rahimi,* 144 S. Ct. at 1898 (citation omitted).

Courts have concluded that the plaintiffs bear the burden at the first step to demonstrate that the plain text of the amendment covers the regulated conduct. *Or. Firearms Fed'n*, 682 F.

Page 4 –    DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT
            AND, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Supp. 3d at 888 (A "plaintiff challenging a firearm regulation must show the plain text of the Second Amendment covers the conduct regulated by the challenged law.") (citation omitted); *United States v. James*, 677 F. Supp. 3d 329, 339 n.7 (D.V.I. 2023) ("[T]he party challenging a regulation under the Second Amendment bears the burden to show that the plain text covers the prohibited conduct.").[1]  It is the government's burden to satisfy the second step. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen,* 597 U.S. 1, 33-34 (2022).

Plaintiffs' case fails at the first step.  Plaintiffs have failed to allege any facts showing that ghost guns are in common use for lawful purposes like self-defense.  Indeed, all available facts suggest the contrary.  The Court should dismiss plaintiffs' Amended Complaint under Rule 12(b)(6).

   **C.** **Plaintiffs' Amended Complaint fails to allege facts showing that ghost guns are in common use for self-defense.**

It is plaintiffs' burden to establish that the plain text of the Second Amendment covers ghost guns, the weapons regulated by H.B. 2005.  Plaintiffs' Amended Complaint fails to meet its burden because it contains no specific factual allegations demonstrating that ghost guns—as opposed to firearms generally—are in common use for self-defense.

The Amended Complaint contains the conclusory allegation that "the firearms subject to [H.B. 2005] are 'arms' 'in common use' for lawful purposes[.]"  (Am. Compl. (Dkt. 36) ¶ 27; *see also* ¶ 56.)  This is not an allegation of fact; it is a conclusory and formulaic recitation of the Second Amendment's common-use requirement.  This is precisely the sort of conclusory

---

[1] These holdings are consistent with how the Supreme Court treats the burdens for establishing the applicability of other fundamental rights.  For example, "it is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate that the First Amendment even applies." *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984).

Page 5 – DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

allegation that federal courts do not credit. *Twombly*, 550 U.S. 544, 555; *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988) ("conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim") (citation omitted). Because plaintiffs fail to allege any facts that ghost guns are in common use for lawful purposes, the Court should dismiss the Amended Complaint for failure to state a claim. *See Austin v. Univ. of Oregon*, 925 F.3d 1133, 1135 (9th Cir. 2019) (affirming dismissal of complaint where, "putting aside mere conclusory allegations, the complaint fail[ed]" to state a claim for relief).

Although plaintiffs have not alleged any facts about the common use of ghost guns, they try to convince this Court to overlook that defect by alleging facts to show that semiautomatic firearms as a whole are in common use. (*See* Am. Compl. ¶¶ 28-39.) Plaintiffs allege, for example, that H.B. 2005 "reach[es] Plaintiffs' possession of common Glock-style semiautomatic handguns and AR-style semiautomatic rifles, which are each indisputably in common use for lawful purposes throughout the United States." (*Id.* ¶ 29.) According to plaintiffs' logic, because ghost guns can also be semiautomatic handguns and rifles and because plaintiffs allege that semiautomatic handguns and rifles are commonly used for lawful purposes, their claims against H.B. 2005's ghost gun prohibitions survive the first step of the Second Amendment inquiry.

But H.B. 2005 does not prohibit semiautomatic handguns and rifles. All it does is require firearms to have serial numbers on them and to be constructed in a way that will not evade security devices. The only question for the Court is whether the Second Amendment prohibits these requirements. There is no basis for plaintiffs' suggestion that the Court must treat H.B. 2005 as though it bans the possession of semiautomatic handguns and rifles.

Page 6 –   DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT
            AND, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

This Court has already explained that plaintiffs' oversimplification cannot be squared with the Supreme Court's Second Amendment jurisprudence. In its Opinion and Order on Plaintiffs' Motion for Temporary Restraining Order, the Court explained that the first step of the Second Amendment analysis does not focus on whether a law affects firearms generally, but whether it covers the specific regulated features:

> In essence, plaintiffs would have this Court reduce the first prong to the most basic of inquiries: Does the regulation affect a firearm? There would be no assessment of any distinguishing features of the firearm—if it is a handgun, the right to keep and bear it is protected. Yet, the Second Amendment does not protect the right to keep and bear all firearms, regardless of its use and purpose. *See Heller*, 554 U.S. at 583. Indeed, in *Heller*, the Supreme Court stated that "the Second Amendment does not protect those weapons not typically possessed by lawabiding citizens for lawful purposes, such as short-barreled shotguns." *Id.* at 625. It is difficult to perceive how short-barreled shotguns, which are merely a modified version of a shotgun, would fall outside the purview of Second Amendment protection if the only relevant question is whether the regulation affects a bearable arm.

(Op. & Order (Dkt. 29) at 5.)

In light of this analysis, the Court concluded that plaintiffs must "demonstrate that unserialized firearms, undetectable firearms, and unfinished frames and receivers are bearable arms in common use by law-abiding citizens for lawful purposes." (*Id.*) The Amended Complaint's conclusory allegations about ghost guns and irrelevant allegations about other firearms fail to satisfy this demand.[2]

---

[2] Plaintiffs' focus on semiautomatic firearms in the First Amended Complaint, rather than on the ghost guns actually regulated by H.B. 2005, appears to be a tacit acknowledgement that they are unable to plausibly allege facts to support their claim.

Page 7 –    DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT
            AND, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Courts have overwhelmingly concluded that unserialized and undetectable firearms have no lawful purpose and are not, therefore, protected by the Second Amendment.[3] *See, e.g., Price*, 111 F.4th at 408 (4th Cir. 2024) (*en banc*) ("we cannot fathom any common-sense reason for a law-abiding citizen to want to use a firearm with an obliterated serial number for self-defense"); *United States v. Avila*, 672 F. Supp. 3d 1137, 1144 (D. Colo. 2023) ("[F]irearms with obliterated serial numbers are not within the class of firearms typically possessed by law-abiding citizens for lawful purposes."); *United States v. Trujillo*, 670 F. Supp. 3d 1235, 1241 (D.N.M. 2023) ("[F]irearms with removed, obliterated, or altered serial numbers are weapons not typically possessed by law-abiding citizens for lawful purposes[.]" (quotation marks and citations omitted)); *United States v. Serrano*, 651 F. Supp. 3d 1192, 1210 (S.D. Cal. 2023) ("A law requiring that firearms have serial numbers simply does not infringe a law-abiding citizen's right to keep and bear arms for self-defense and other lawful purposes."); *United States v. Sing-Ledezma*, No. 3:23-cr-00823-KC, 2023 WL 8587869, at *4 (W.D. Tex. Dec. 11, 2023) (Federal law prohibiting removal of serial numbers "prohibits only the possession of highly unusual weapons, it falls outside the ambit of the Second Amendment's protection." (quotation marks and citation omitted)); *United States v. Brabham*, No. 1:21-cr-00342, 2024 WL 3165467, at *5 (M.D. Pa. June 24, 2024) ("A firearm without a serial number is not necessary for a law-abiding citizen's right to self-defense, which is the conduct at the heart of the Second Amendment.") (citations omitted); *United States v. Reyna*, No. 3:21-cr-00041-RLM-MGG, 2022 WL 17714376,

---

[3] Although these cases address the removal of serial numbers from firearms, and not the possession of firearms that never had serial numbers, this Court has rightly concluded that is a distinction without a difference. (Op. & Order (Dkt. 29) at 8 (Plaintiffs fail to identify "any meaningful difference between wanting to manufacture an unserialized firearm and wanting to remove a serial number from a firearm—in both instances, the goal is obtaining an unserialized firearm.").)

Page 8 –     DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT
             AND, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

at *5 (N.D. Ind. Dec. 15, 2022) ("Guns with obliterated serial numbers belong to those weapons not typically possessed by law-abiding citizens for lawful purposes so possession of such guns isn't within the Second Amendment's scope.") (quotation marks and citation omitted); *Washington*, 318 F. Supp. 3d at 1261 (concluding that guns made from plastic will elude security equipment intended to promote public safety and will allow "those who are, by law, prohibited from manufacturing, possessing, and/or using guns to more easily evade those limitations").

For these reasons, plaintiffs' Amended Complaint fails to—and cannot—state a claim for relief and should be dismissed with prejudice.

### D. The Court should dismiss plaintiffs' complaint with prejudice because further amendment would be futile.

The Court should dismiss plaintiffs' Amended Complaint with prejudice because there are *no* facts plaintiffs could allege showing that ghost guns are in common use for lawful purposes. Since 1968, federal law has required serial numbers on firearms that are manufactured in, commercially imported into, or dealt within the United States. 18 U.S.C. § 923(a) and (i). Given that long regulatory history, it would be implausible for plaintiffs to contest that the overwhelming majority of firearms currently in the United States carry serial numbers.[4] Similarly, federal law has prohibited undetectable firearms since 1988. 18 U.S.C. § 922(p)(1).

---

[4] At the hearing regarding plaintiffs' motion for a temporary restraining order, plaintiffs relied on a regulatory note from the Bureau of Alcohol, Tobacco, and Firearms ("ATF") to suggest that "[a]pproximately one million individual owners" may own ghost guns. 87 Fed. Reg. at 24,731. However, one million owners out of more than 258 million adult Americans hardly constitutes "common" ownership. (*See* https://www.census.gov/library/stories/2021/08/united-states-adult-population-grew-faster-than-nations-total-population-from-2010-to-2020.html (last visited Oct. 21, 2024).) And even if ownership by less than four in one thousand adult Americans could be considered common, this Court has correctly explained that the inquiry under *Heller* and *Bruen* is not whether ghost guns are "commonly owned" but instead whether they are "in common use today for self-defense." (Op. & Order at 7 (citing and quoting *Or. Firearms Fed. v. Kotek,* 682 F. Supp. 3d 874, 915 (D. Or. 2023).)

Page 9 –   DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

As such, it is impossible to imagine that undetectable firearms are commonly used for lawful purposes.

Not only are ghost guns rare, they are often used unlawfully. Regardless of the purposes for which plaintiffs may wish to own ghost guns, the ATF has observed that "unserialized firearms are inherently attractive to criminals[.]" ATF, Final Rule, Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24,677 (Apr. 26, 2022).[5] The ATF tracks requests from local law enforcement to trace firearms used in potential crimes. From January 1, 2016 through December 31, 2021, law enforcement reported approximately 45,240 ghost guns recovered from potential crime scenes. *Id.* at 24,656. Nearly half that total were recovered in 2021 alone. *Id.*

Three-dimensional-printed polymer guns, meanwhile, are "virtually undetectable in metal detectors and other security equipment intended to promote public safety at airports, sporting events, courthouses, music venues, and government buildings," Washington v. United States Dep't of State, 318 F. Supp. 3d 1247, 1261 (W.D. Wash. 2018), leading Congress to declare that "the emergence of functional 3D-printed guns are a homeland security threat." H.R. Rep. No. 116-88.

All of this is unsurprising. The only advantage of unserialized firearms over serialized firearms is that they frustrate law enforcement efforts to investigate and prosecute crime. 87 Fed. Reg. 24,652 (Serial numbers allow "law enforcement to determine where, by whom, or when" a firearm was manufactured and "to whom [it was] sold or otherwise transferred."); Abramski v. United States, 573 U.S. 169, 182 (2014) ("When police officers retrieve a gun at a

---

[5] As noted above, the "contents of the Federal Register shall be judicially noticed." 44 U.S.C. § 1507.

Page 10 –    DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT
             AND, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

crime scene, they can trace it to the buyer and consider him as a suspect."). Likewise, the defining advantage of an undetectable firearm over a standard firearm is that the undetectable one can evade security devices deployed to protect sensitive places.

Otherwise, firearms without serial numbers are functionally identical to those with them. *United States v. Marzzarella*, 614 F.3d 85, 94 (3d Cir. 2010), *abrogated on other grounds by Range v. Attorney Gen. United States of Am.*, 69 F.4th 96 (3d Cir. 2023), *cert. granted, judgment vac'd*, No. 23-374, 2024 WL 3259661 (U.S. July 2, 2024). As a result, there can be no legitimate functional reason to prefer an unserialized or undetectable firearm for self-defense. *See Price*, 111 F.4th at 408 (noting that the court "cannot fathom any common-sense reason for a law-abiding citizen to want to use a firearm with an obliterated serial number for self-defense"); *see also Bianchi v. Brown*, 111 F.4th 438, 450 (4th Cir. 2024), *petition for cert. docketed* (4th Cir. Aug. 6, 2024) (noting that "excessively dangerous arms" that are "better suited for offensive criminal . . . purposes" fall outside the Second Amendment).

As such, it is impossible to imagine that plaintiffs could plead any additional facts showing that ghost guns are in common use for lawful purposes. Plaintiffs responded to defendants' first Motion to Dismiss (Dkt. 34) by filing the Amended Complaint. But plaintiffs' amendments fail to cure this fundamental deficiency. Because "further amendment would be futile," the Court should dismiss the Amended Complaint with prejudice. *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).

### E. Regulation of ghost guns also is consistent with the Nation's regulatory tradition as a matter of law.

If the Court concludes that the Second Amendment covers ghost guns, H.B. 2005 is nonetheless constitutional because it "is consistent with the principles that underpin our regulatory tradition." *Rahimi*, 144 S. Ct. at 1898. To determine whether a law is consistent with

the Nation's tradition, the "court must ascertain whether the new law is relevantly similar to laws that our tradition is understood to permit[.]" *Id.* (quotation marks and citation omitted). One-to-one correspondence between present and historic laws is not required: "the Second Amendment permits more than just those regulations identical to ones that could be found in 1791." *Id.* at 1897-98.

There are many historical analogs to H.B. 2005. For example, early American militia laws "required militiamen and other householders to bring their guns to the muster field twice a year so that militia officers could record which men in the community owned guns. Some colonies authorized door-to-door surveys of gun ownership." Robert H. Churchill, Gun Regulation, the Police Power, and the Right to Keep Arms in Early America: The Legal Context of the Second Amendment, 25 Law & Hist. Rev. 139, 161 (2007). These regulations, which allowed the colonies to account for what weapons their citizens owned, are similar to (and more rigorous) than H.B. 2005's restrictions on unserialized firearms, which merely require individuals to possess identifiable firearms. The historical record is also filled with examples of laws requiring firearm sellers to record identifying information for each purchaser, confirming that tracking firearms is consistent with the Nation's history and tradition of firearm regulation.[6]

---

[6] *See, e.g.*, Merritt Starr & Russell H. Curtis, Annotated Statutes of the State of Illinois in Force (1885), Criminal Code Ch. 38, para. 90. ("All persons dealing in deadly weapons, hereinbefore mentioned, at retail within this State shall keep a register of all such weapons sold or given away by them.") (available at https://firearmslaw.duke.edu/laws/merritt-starr-russell-h-curtis-annotated-statutes-of-the-state-of-illinois-in-force-1885-criminal-code-ch-38-para-90, last visited Oct. 21, 2024); 1911 Colo. Sess. Laws 408, Section 3 (requiring firearms sellers to "keep a record of each pistol or revolver sold, rented or exchanged at retail" including the name of the purchaser "number and serial letter, if any" of the firearm) (available at https://firearmslaw.duke.edu/laws/1911-colo-sess-laws-408, last visited Oct. 21, 2024); 1913 Mich. Pub. Acts 472, § 1-2 (requiring sellers of firearms to keep "a register" which included the name of the purchaser and "number or other mark of identification, if any" on the firearm) (available at https://firearmslaw.duke.edu/laws/1913-mich-pub-acts-472-an-act-providing-for-the-registration-of-the-purchasers-of-guns-pistols-other-fire-arms-and-silencers-for-fire-arms-

Furthermore, our historical tradition has long prohibited individuals from concealing firearms. *Heller*, 554 U.S. at 626 ("the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues"). H.B. 2005's restrictions on unserialized and undetectable firearms, which prevent individuals from concealing weapons from security devices and from law enforcement tracing, are analogous to concealed weapons prohibitions.

Ultimately, H.B. 2005 does not prohibit any person from owning firearms. It merely requires firearms to be detectable and to have serial numbers. These commonsense restrictions fit easily within the American tradition of regulation. Thus, even if the Court finds that the Second Amendment applies to ghost guns, it should nonetheless conclude that H.B. 2005 is constitutional and dismiss plaintiffs' Amended Complaint.

II. **In the alternative, the Court should grant summary judgment on plaintiffs' claim under Rule 56 because there are no facts showing that ghost guns are commonly used for self-defense.**

    A. **The Court must grant summary judgment where plaintiffs fail to make a showing of sufficient evidence to support their claim.**

Under Rule 56(a), the court must grant summary judgment if the evidence "show[s] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." It is plaintiffs' burden to "make a showing sufficient to establish the existence of an element essential to [their] case, and on which [they] will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). Where plaintiffs fail to do so, there is no genuine

---

and-providing-a-penalty-for-violation-c2a7-1-2, last visited Oct. 21, 2024); *see also* 1918 Mont. Laws 6-7, 9, ch. 2, §§ 1, 3, 8 (requiring firearm owners to self-report all "fire arms and weapons which are owned or possessed by him or her or are in his or her control") (available at https://firearmslaw.duke.edu/laws/1918-mont-laws-6-79-an-act-entitled-an-act-providing-for-the-registration-of-all-fire-arms-and-weapons-and-regulating-the-sale-thereof-and-defining-the-duties-of-certain-county-officers-and-provid, last visited Oct. 21, 2024).

Page 13 –    DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT
               AND, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

issue of material fact and defendants are entitled to summary judgment because the failure of proof as to an essential element "renders all other facts immaterial." *Id.* at 323.

### B. Plaintiffs have not and cannot show any evidence that ghost guns are in common use for self-defense.

Just as plaintiffs have failed to allege any facts showing that ghost guns are in common use for self-defense, plaintiffs have no evidence that ghost guns are in common use for self-defense. Plaintiffs presented no evidence accompanying their motion for temporary restraining order and offered none at the hearing. As discussed above, there is no such evidence because the primary use of unserialized and undetectable firearms is criminal, not lawful. (Op. & Order at 9 (Ghost guns "are most commonly used for illegal purposes.").)

Plaintiffs bear the burden of demonstrating that ghost guns fall within the Second Amendment at trial, and thus they also bear that burden at summary judgment. *Celotex*, 477 U.S. at 322. The Court should adhere to its August 20, 2024, Opinion and Order which found that the weapons regulated by H.B. 2005 are not arms protected by the Second Amendment, and grant summary judgment to defendants on plaintiffs' claim for relief.

### CONCLUSION

H.B. 2005 lawfully regulates firearms and firearm parts not protected by the Second Amendment. Plaintiffs' Amended Complaint does not, and cannot, meaningfully allege otherwise. This Court should dismiss plaintiffs' Amended Complaint for failure to state a claim upon which relief can be granted with prejudice. In the alternative, the Court should grant summary judgment to defendants on plaintiffs' sole claim for relief.

DATED: October 22, 2024.

ELLEN F. ROSENBLUM
ATTORNEY GENERAL
FOR THE STATE OF OREGON

*s/ Erin N. Dawson*
Harry B. Wilson, OSB #077214
HarryWilson@MarkowitzHerbold.com
Anit K. Jindal, OSB #171086
AnitJindal@MarkowitzHerbold.com
Erin N. Dawson, OSB #116334
ErinDawson@MarkowitzHerbold.com
*Special Assistant Attorneys General for Defendants*

2211298.6

**Page 15 –**   DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT