**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Anit K. Jindal, OSB #171086**
AnitJindal@MarkowitzHerbold.com
**Erin N. Dawson, OSB #116334**
ErinDawson@MarkowitzHerbold.com
**MARKOWITZ HERBOLD PC**
1455 SW Broadway, Suite 1900
Portland, OR  97201
Telephone: (503) 295-3085
*Special Assistant Attorneys General for Defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DALLIN MONTGOMERY; NICK HOLDWAY; KEVIN WALTERS; OREGON FIREARMS FEDERATION, INC.; and FIREARMS POLICY COALITION, INC., <br><br>    Plaintiffs, <br><br> v. <br><br> ELLEN ROSENBLUM, in her Official Capacity as Oregon Attorney General; and CASEY CODDING, in his Official Capacity as Superintendent of the Oregon State Police, <br><br>    Defendants. | Case No. 3:24-cv-01273-AN <br><br> **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

The Second Amendment applies only to arms that are "in common use" for "lawful purposes" like self-defense. *District of Columbia v. Heller*, 554 U.S. 570, 625, 627 (2008).

Page 1 –    REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Because plaintiffs have not—and cannot—allege that ghost guns are in common use for lawful purposes, the Court should dismiss plaintiffs' complaint with prejudice.

## ARGUMENT

**I.     House Bill 2005 (2023) is constitutional because ghost guns are not Arms protected by the Second Amendment.**

The plain text of the Second Amendment does not extend to the right to manufacture, own, or use ghost guns. As a result, the State may appropriately regulate ghost guns through House Bill 2005 (2023) ("H.B. 2005").

In *District of Columbia v. Heller*, the Supreme Court explained that the Second Amendment protects an individual's right to keep and bear arms, but in doing so, cautioned that "the right secured by the Second Amendment is not unlimited." 554 U.S. at 626. In particular, *Heller* recognized that "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns. That accords with the historical understanding of the scope of the right[.]" *Id*. at 625.

Fourteen years after *Heller*, the Supreme Court laid out the analytical structure for addressing regulations challenged on Second Amendment grounds: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 24 (2022) (citation omitted). Thus, under *Bruen*, the analysis has two separate steps. In the first, plaintiffs bear the burden to show the Second Amendment's plain text covers the regulated conduct. If plaintiffs do so, the government must show in the second step that the regulation is consistent with the historical tradition of firearm

regulation.  *See Oregon Firearms Fed. v. Kotek*, 682 F.Supp.3d 874, 888 n.4 (D. Or. 2023) (stating same).

In their response, plaintiffs advance two incorrect arguments.  First, they contend that *Heller*'s common-use analysis is applied at the second step of the *Bruen* test, which addresses history and tradition.  But *Bruen* and binding Ninth Circuit precedent instruct that the common-use analysis is performed at the first step, which addresses whether the plain text of the Second Amendment covers the regulated conduct.  At bottom, the "sorts of weapons" protected as Arms under the Second Amendment are those "in common use" for lawful purposes like self-defense. *Heller,* 554 U.S. at 624, 627 (quoting *Miller*, 307 U.S. 174, 179 (1939)).  Second, plaintiffs ask the Court to assess H.B. 2005 as though it regulates firearms in general, rather than merely ghost guns.  But H.B. 2005 regulates only undetectable and unserialized firearms, and the Court is not required to pretend otherwise.

  A. *Heller*'s common-use analysis is applied at the first step under *Bruen*.

The common-use analysis is applied under *Bruen*'s first step.  This makes sense because by engaging in the common-use inquiry as part of a plain text analysis, the Court can determine at the outset—as it must—whether a weapon is protected as an Arm under the Second Amendment.  *Bruen* formulated three questions to determine whether the Second Amendment's plain text analysis is satisfied: (1) whether plaintiffs are "part of the people whom the Second Amendment protects"; (2) whether the weapons regulated are "'in common use' today for self-defense"; and (3) whether the Second Amendment protects plaintiffs' "proposed course of conduct."  597 U.S. at 31-32 (quotation marks and citations omitted); *United States v. Rahimi*, 602 U.S. 680, 735 (2024) (Kavanaugh, J., concurring) (confirming *Heller* stated that "the Second Amendment attaches only to weapons 'in common use'")*; United States v. Price*, 111 F.4th 392,

Page 3 –  REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST
      AMENDED COMPLAINT AND, IN THE ALTERNATIVE, MOTION FOR
      SUMMARY JUDGMENT

401 (4th Cir. 2024), *petition for cert filed* No. 24-5937 (U.S. Nov. 7, 2024) ("[B]y engaging in [those textual questions] at step one, *Bruen* made clear that the limitations on the scope of the Second Amendment right identified in *Heller* are inherent in the text of the amendment."). As the Ninth Circuit has held, these questions—including the common-use analysis—are determined as part of *Bruen*'s first step: "*Bruen* step one involves a threshold inquiry. In alignment with *Heller*, it requires a textual analysis, determining whether the challenger is 'part of "the people" whom the Second Amendment protects,' whether the weapon at issue is '"in common use" today for self-defense,' and whether the 'proposed course of conduct' falls within the Second Amendment." *United States v. Alaniz*, 69 F.4th 1124, 1128 (9th Cir. 2023) (quoting *Bruen*, 597 U.S. at 31-32).

Despite that precedent, plaintiffs argue that the common-use analysis falls into the second step of the *Bruen* framework, which addresses history and tradition. (Pls.' Resp. to Defs.' Mot. to Dismiss First Am. Compl. ("Pls.' Resp.") (Dkt. 40) at 14 (incorrectly arguing that whether a statute regulates protected Arms is addressed at the second step). But the Ninth Circuit's meaning in *Alaniz* is not ambiguous. 69 F.4th at 1128. And the *Bruen* Court itself addressed "common use" as part of its plain text analysis. 597 U.S. at 31-32 (concluding that because the firearms at issue in that case—handguns—"are weapons 'in common use' today for self-defense" the regulations at issue implicated the plain text of Second Amendment).

Because the common-use analysis is integral to assessing whether the challenged law regulates protected Arms that fall within the scope of the Second Amendment, it is plaintiffs' burden to show that ghost guns are in common use for lawful purposes like self-defense. They have failed to even allege that this is true.

Page 4 –     REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST
             AMENDED COMPLAINT AND, IN THE ALTERNATIVE, MOTION FOR
             SUMMARY JUDGMENT

**B.    Under *Heller* and *Bruen*'s common-use analysis, ghost guns are not protected by the Second Amendment.**

Under *Heller*, and confirmed by *Bruen*, the Second Amendment "is not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." 554 U.S. at 626. If a weapon is not in "common use" for a lawful purpose like self-defense, it falls outside the protection of the Second Amendment. *Price*, 111 F.4th at 405; *see Bianchi v. Brown*, 111 F.4th 438, 446 (4th Cir. 2024) ("If the text does not extend to the desired conduct, that conduct falls outside the ambit of the Second Amendment, and the government may regulate it.").

As thoroughly explained in defendants' Motion to Dismiss (Dkt. 37 at 9-15), ghost guns are not in common use for lawful purposes like self-defense. *Price*, 111 F.4th at 408 ("[W]e cannot fathom any common-sense reason for a law-abiding citizen to want to use a firearm with an obliterated serial number for self-defense"). To the contrary, ghost guns are uniquely attractive to those seeking to commit crimes—they cannot be traced or detected and they evade the background checks designed to protect all Oregonians. *United States v. Avila*, 672 F. Supp. 3d 1137, 1144 (D. Colo 2023) (concluding that firearms without serial numbers "are dangerous and unusual weapons and, therefore, not within the scope of the Second Amendment's guarantee."); *Washington v. United States Dep't. of State*, 318 F. Supp. 3d 1247, 1261 (W.D. Wash. 2018) (undetectable guns will allow unlawful purchasers to more easily evade lawful limitations).

Plaintiffs attempt to evade this obvious reality by characterizing H.B. 2005 as a regulation aimed at restricting Glock-style semi-automatic handguns or AR-style semi-automatic rifles writ large. Their attempt is flawed. As this Court has already concluded, H.B. 2005 only regulates the serialization and undetectable qualities in firearms. (Op. & Order (Dkt. 29) at 5);

Page 5 –    REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

*see United States v. Reyna*, No. 3:21-CR-41 RLM-MGG, 2022 WL 17714376, at *5 (N.D. Ind. Dec. 15, 2022) (concluding that a prohibition on ghost guns "applies to a class of guns defined solely by a nonfunctional characteristic: the serial number."). Those non-functional characteristics are not protected by *Heller* and *Bruen*. Thus, "[a] law requiring that firearms have serial numbers simply does not infringe a law-abiding citizen's right to keep and bear arms for self-defense and other lawful purposes." *United States v. Serrano*, 651 F. Supp. 3d 1192, 1210 (S.D. Cal. 2023); *see also Reyna*, 2022 WL 17714376, at *1 (N.D. Ind. Dec. 15, 2022) ("[T]he plain text of the Second Amendment doesn't reach a handgun without a serial number."); *United States v. Bradley*, No. 2:22-CR-00098, 2023 WL 2621352, at *3 (S.D. W.Va. Mar 23, 2023) (regulations relating to serialized firearms are "outside the scope or text of the Second Amendment") (citation omitted). And, as defendants noted in their Motion to Dismiss, H.B. 2005 does not impact any individual's right to own firearms. (Dkt. 37 at 17.) Glock-style semi-automatic handguns and AR-style semi-automatic rifles remain readily available regardless of H.B. 2005. The Court is not required to analyze H.B. 2005 as though it prohibits those weapons.

Plaintiffs also characterize their protected activity as the personal manufacturing of firearms. But just as H.B. 2005 does not prohibit anyone from purchasing a serialized and detectable handgun, it does not prevent anyone from self-manufacturing a detectable and serialized firearm. H.B. 2005 requires firearms to have serial numbers and to be detectable. That is all. It does not prohibit the self-manufacture of firearms.

Plaintiffs have not alleged any meaningful facts demonstrating that ghost guns are in common use for lawful purposes. Plaintiffs cite only to a Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) report that they allege states approximately one million Americans own

privately made firearms or "precursors."[1]  (Pls.' Resp. at 17.)  Even if plaintiffs' cited statistic is accurate, defendants do not concede that a million owners nationwide—in a country of more than 260 million adults—would constitute common ownership of the firearm.  (By way of comparison, there are an estimated 22 million millionaires in the United States.)  Furthermore, as this Court already pointed out, plaintiffs' single citation does not demonstrate whether the firearms or "precursors," are used for lawful purposes.  (Op. & Order at 7 ("[P]laintiffs erroneously equate 'commonly owned' with 'in common use today for self-defense.'") (quotation marks and citation omitted).)  The fact that a firearm is unserialized or is undetectable is not a feature that is useful for lawful purposes.  Instead, those features facilitate unlawful use.  And the increased unlawful use of ghost guns is precisely what motivated the enactment of H.B. 2005.  Plaintiffs have presented no meaningful information to address this issue.

### C. Even if the Court considers evidence of historical tradition, H.B. 2005 is constitutional.

Even if the Court turns to history, restrictions on ghost guns are "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24.

*Rahimi* illuminates *Bruen*'s historical analogue requirement.  602 U.S. at 692.  Under *Bruen*'s analysis, an historical twin to the challenged regulation is not needed.  Instead, the Court should ask whether the new law "is consistent with the principles that underpin our regulatory tradition." *Id*.  As explained in defendants' Motion to Dismiss, regulations in this country have long required firearm owners to report their firearms to governing authorities.  (Defs.' Mot. to Dismiss First Am. Compl. (Dkt. 37) at 12.)  Requiring serialization also comports with a long-

---

[1] They also assert that the "true number" of privately made firearms or "precursors" is likely much higher than the ATF's estimate.  Plaintiffs provide nothing to support that position.

Page 7 –    REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

standing tradition of recording and marking firearms in order to track ownership and address gun trafficking. *See New York v. Arm or Ally, LLC*, 718 F. Supp. 3d 310, 336 (2024) (concluding "there is ample historical precedent for restrictions on the manufacturing and possession of arms for personal use, including a long tradition of gun serialization and enforcing serialization on a person-to-person level."); *Bradley*, 2023 WL 2621352, at *4-5 (highlighting colonial laws authorizing censuses to record firearm ownership); *Serrano*, 651 F. Supp. 3d at 1211-12 (recognizing seventeenth-century law requiring records of arms and ammunition); *United States v. Tita*, No. 21-CR-334, 2022 WL 17850250, at * 7-8 (D. Md. Dec. 22, 2022) (agreeing that seventeenth-century laws that "regulated trading and selling [of] firearms outside of each respective colony . . . are historical analogues to the current serial number requirement."); *see also* Robert J. Spitzer, *Gun Law History in the United States and the Second Amendment Rights*, 80 L. & CONTEMP. PROBS. 75-77 (2017) (highlighting colonial and early American laws requiring inspection and recording of arms, regulating trafficking and sales of arms, and prohibiting the sale or transfer of firearms to certain types of persons). Defendants have identified historical analogues that satisfy *Rahimi*'s direction to "ascertain whether [H.B. 2005] is relevantly similar to laws that our tradition is understood to permit[.]" *Rahimi*, 602 U.S. at 692 (quotation marks and citation omitted). It is.

Plaintiffs have failed to sufficiently allege a claim that H.B. 2005 violates their Second Amendment rights. Defendants ask the Court to grant their Motion to Dismiss, or in the Alternative, Motion for Summary Judgment on plaintiffs' claim.

## II.     Plaintiffs are not entitled to summary judgment.

Plaintiffs seek a cross-motion for summary judgment because they believe that H.B. 2005 falls within the plain text protection of the Second Amendment and defendants have failed to cite

Page 8 –     REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST
             AMENDED COMPLAINT AND, IN THE ALTERNATIVE, MOTION FOR
             SUMMARY JUDGMENT

to a sufficient historical analogue for H.B. 2005. But, as explained above, ghost guns are not protected by the Second Amendment. The overwhelming majority of courts to consider the question agree.[2]

## CONCLUSION

For the reasons stated above and in defendants' moving papers, defendants ask the Court to grant their Motion to Dismiss and, in the Alternative, Motion for Summary Judgment and to deny plaintiffs' motion for summary judgment.

DATED: December 30, 2024.

ELLEN F. ROSENBLUM
ATTORNEY GENERAL
FOR THE STATE OF OREGON

*s/ Erin N. Dawson*
Harry B. Wilson, OSB #077214
HarryWilson@MarkowitzHerbold.com
Anit K. Jindal, OSB #171086
AnitJindal@MarkowitzHerbold.com
Erin N. Dawson, OSB #116334
ErinDawson@MarkowitzHerbold.com
*Special Assistant Attorneys General for Defendants*

2238178.6

---

[2] Because ghost guns are not Arms protected by the Second Amendment, this matter should be resolved under a plain text analysis. However, if the Court instead concludes that an historical review is needed to address plaintiffs' motion for summary judgment, defendants request additional time pursuant to FRCP 56(d) to obtain declarations from expert witnesses. (Declaration of Erin N. Dawson in Support of Reply in Support of Defs.' Mot. to Dismiss First Am. Compl., ¶ 2.)

Page 9 – REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT