IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DALLIN MONTGOMERY, NICK HOLDWAY, KEVIN WALTERS, OREGON FIREARMS FEDERATION, INC., and FIREARMS POLICY COALITION, INC.,<br><br>Plaintiffs,<br>v.<br><br>ELLEN ROSENBLUM,[1] in her official capacity as Oregon Attorney General, and CASEY CODDING, in his official capacity as Superintendent of the Oregon State Police,<br><br>Defendants. | Case No.: 3:24-cv-01273-AN<br><br>OPINION AND ORDER |

Plaintiffs Dallin Montgomery ("Montgomery"), Nick Holdway ("Holdway"), Kevin Walters ("Walters") (together, the "individual plaintiffs"), Oregon Firearms Federation, Inc. ("OFF"), and Firearms Policy Coalition, Inc. ("FPC") (with OFF, the "organizational plaintiffs") (collectively with the individual plaintiffs, "plaintiffs") bring this action against defendants Ellen Rosenblum, in her official capacity as Oregon Attorney General, and Casey Codding, in his official capacity as Superintendent of the Oregon State Police, alleging violations of their Second and Fourteenth Amendment rights under 42 U.S.C. § 1983. Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56. Plaintiffs oppose the motion and, to the extent summary judgment is reached, cross-move for summary judgment. After reviewing the parties' pleadings, the Court finds that oral argument will not help resolve this matter. Local R. 7-1(d). For the reasons stated below, defendants' motion to dismiss is GRANTED and the first amended complaint is dismissed with leave to amend. If plaintiffs wish to file a second amended complaint, they must do within thirty (30) days of the date of this Opinion and Order.

---

[1] Though Dan Rayfield remains named on the docket, Ellen Rosenblum, in her official capacity as Oregon Attorney General, has been substituted in his place as a defendant in this action pursuant to Federal Rule of Civil Procedure 25(d). Order of February 20, 2025, ECF [44]; Mot. to Amend/Correct Caption, ECF [43].

1

## LEGAL STANDARD

A.  **Failure to State a Claim**

A motion to dismiss for failure to state a claim should be granted when the allegations do not "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

When evaluating the sufficiency of a complaint, courts "accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *see Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). "[A]llegations in a complaint . . . may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). While the court must draw all reasonable inferences from the factual allegations in favor of the plaintiff, *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008), the court need not credit legal conclusions that are couched as factual allegations, *Iqbal*, 556 U.S. at 678.

B.  **Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that there is no genuine issue of material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). Material facts are those "that might affect the outcome of the suit[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Materiality is determined using substantive law. *Id.* A dispute is genuine "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Id.*

When a moving party demonstrates the absence of a genuine dispute as to any material fact, the nonmoving party that bears the burden at trial must show in response that there is evidence creating a genuine dispute as to any material fact. *Rivera*, 395 F.3d at 1146 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986)). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010) (citing *Anderson*, 477 U.S. at 255). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255.

## BACKGROUND

**A.     Oregon House Bill 2005**

This case concerns the constitutionality of Oregon's "ghost gun" law, House Bill 2005 ("HB 2005"), which the Oregon legislature enacted on July 13, 2023. In relevant part, HB 2005 added three new provisions to chapter 166 of the Oregon Revised Statutes ("ORS"): ORS §§ 166.265, 166.266, and 166.267.

The first provision, ORS § 166.265, states in relevant part:

> "(1)(a) A person may not knowingly manufacture or cause to be manufactured within this state, import into this state, or offer for sale, sell or transfer, an undetectable firearm.
> . . .
> "(2)(a) A person may not knowingly possess an undetectable firearm."

An "undetectable firearm" is defined as a firearm that is:

> "(a) Constructed or produced, including through a three-dimensional printing process, entirely of nonmetal substances;
> (b) That, after removal of grips, stocks and magazines, is not detectable as a security exemplar by a walk-through metal detector calibrated to detect the security exemplar; or
> (c) That includes a major component that, if subjected to inspection by the types of X-ray machines commonly used at airports, would not generate an image that accurately depicts the shape of the component."

Or. Rev. Stat. § 166.210(17).

The second provision, ORS § 166.266, states in relevant part:

> "(1) A person may not knowingly possess, offer for sale, sell or transfer a firearm unless the firearm has been imprinted with a serial number by a federally licensed firearm

3

> manufacturer, importer or dealer, or a gunsmith with a federal firearms license, in accordance with federal law.
> (2) This section does not apply to:
>> (a) Antique firearms;
>> (b) Firearms manufactured prior to October 22, 1968;
>> (c) Firearms rendered permanently inoperable;
>> (d) The sale, offer to sell, or transfer of a firearm to, or possession of a firearm by, a person licensed as a firearm manufacturer, importer or dealer under 18 U.S.C. 923; or
>> (e) A gunsmith taking possession of a firearm for the purpose of imprinting the firearm with a serial number in accordance with federal law.
> (3)(a) A violation of subsection (1) of this section constitutes a Class B violation."

The third provision, ORS § 166.267, states in relevant part:

> "(1)(a) A person may not knowingly import into this state, offer for sale, sell or transfer an unfinished frame or receiver unless:
>> (A) The person is licensed as a firearm dealer under 18 U.S.C. 923;
>> (B) The name of the manufacturer and an individual serial number is conspicuously placed on the unfinished frame or receiver in accordance with the procedures for the serialization of a firearm in 18 U.S.C. 923(i) and all regulations under the authority of 18 U.S.C. 923(i), including but not limited to 27 C.F.R. 478.92; and
>> (C) The person maintains records relating to the unfinished frame or receiver in accordance with the procedures for record keeping related to firearms in 18 U.S.C. 923(g) and all regulations issued under the authority of 18 U.S.C. 923(g), including but not limited to 27 C.F.R. 478.121 to 478.134.
> . . .
> "(2)(a) A person may not knowingly possess an unfinished frame or receiver that is not serialized as provided in subsection (1)(a)(B) of this section, unless:
>> (A) The person is a federally licensed gun manufacturer; and
>> (B) The unfinished frame or receiver is an unfinished part within a manufacturing process that includes serialization.
> (b) A violation of paragraph (a) of this subsection occurring before September 1, 2024, does not constitute an offense."

An "unfinished frame or receiver" is defined as:

> "(a) [A] forging, casting, printing, extrusion, machined body or similar item that:
>> (A) Is designed to or may readily be completed, assembled or otherwise converted to function as a frame or receiver; or
>> (B) Is marketed or sold to the public to be completed, assembled or otherwise converted to function as a frame or receiver.
> (b) 'Unfinished frame or receiver' does not include a component designed and intended for use in an antique firearm."

Or. Rev. Stat. § 166.210(18).

**B.    Factual Background**

The individual plaintiffs are Oregon citizens, holders of Oregon concealed carry permits, and members of both FPC and OFF.  1st Am. Compl. ("FAC"), ECF [36], ¶¶ 7-9.  FPC is a 501(c)(4)

4

nonprofit membership organization and OFF is an Oregon public benefit corporation that is qualified as tax exempt under 26 U.S.C. 501(c)(4). The organizational plaintiffs seek to defend civil rights, including the right to bear arms. *Id.* ¶¶ 10-11. OFF specifically "seeks to defend the civil rights of all law-abiding individuals in Oregon[,] including the fundamental right to build and acquire additional arms for personal use." *Id.* ¶ 11. All plaintiffs allege that they or their members are harmed by HB 2005. *Id.* ¶¶ 7-11.

More specifically, the individual plaintiffs allege that they owned firearms or firearm components that are now banned by HB 2005. First, Montgomery alleges that he "possessed an unserialized Glock-style semiautomatic handgun he lawfully personally manufactured from a polymer precursor." *Id.* ¶ 7. Second, Holdway alleges that he possessed "an unserialized Glock-style semiautomatic pistol built from a polymer frame; an unserialized Glock-style polymer frame; an unserialized AR-platform rifle built from an 'unfinished frame or receiver'; and an unserialized 'unfinished frame or receiver' that he would manufacture into the receiver for an AR-platform rifle." *Id.* ¶ 8. Lastly, Walters alleges that he "used a 3D printer to personally manufacture frames for three Glock-style semiautomatic pistols using PLA+ filament." *Id.* ¶ 9. The individual plaintiffs allege that they would still possess these items today, but for HB 2005. The organizational plaintiffs allege that their members are similarly "adversely and directly harmed" by defendants' enforcement of HB 2005. *Id.* ¶¶ 10-11.

C.     **Procedural Background**

Plaintiffs initiated this action on August 5, 2024, alleging violations of their Second and Fourteenth Amendment rights under 42 U.S.C. § 1983. Compl., ECF [1]. The initial complaint sought declaratory judgment deeming unconstitutional "HB 2005's prohibitions on (1) the manufacture, importation, sale, transfer, or possession of a so-called 'undetectable' firearm; (2) the sale, transfer or possession of an unserialized firearm; and (3) the importation, sale, transfer, or possession of an unserialized 'unfinished frame or receiver[.]'". *Id.* at 12 (references to ECF pagination). Plaintiffs additionally sought both preliminary and permanent injunctions enjoining defendants from enforcing HB 2005, as well as attorneys' fees and costs. *Id.*

Two days later, on August 7, 2024, plaintiffs filed a motion for a temporary restraining

5

order. Pls. Mot. Temp. Restraining Order, ECF [9]. The Court held oral argument on the motion on August 15, 2024, and issued an opinion and order denying the motion on August 29, 2024. Mins. of Proceedings of August 15, 2024, ECF [27]; Op. & Order of August 20, 2024, ECF [29]. The Court held that plaintiffs did not show a likelihood of success on the merits because they did not offer evidence "to support the implication that unserialized firearms, undetectable firearms, or unserialized, unfinished frames and receivers are in common use by law-abiding citizens for lawful purposes." Op. & Order of August 20, 2024, at 9.

On September 17, 2024, defendants filed a motion to dismiss for failure to state a claim and, in the alternative, motion for summary judgment. Defs. Mot. to Dismiss & Alt. Mot. for Summ. J., ECF [34]. Plaintiffs responded in opposition on October 1, 2024, ECF [35], and then filed a first amended complaint ("FAC"), ECF [36]. Unlike the initial complaint, the FAC does not focus on undetectable and unserialized firearms and firearm components. Rather, it focuses on personally manufactured firearms. *See* FAC ¶¶ 2 ("Oregon enacted [HB 2005], which among other things bans personally manufactured firearms ('PMFs') and their precursor parts ('the Bans' or 'Oregon's Bans')"), 57 ("HB 2005's prohibitions on the sale, transfer, and possession of personally manufactured firearms and precursors violate the Second and Fourteenth Amendments."). The FAC also added allegations describing the lawful common use of semiautomatic firearms, including Glock-style handguns and AR-15-style rifles. *See id.* ¶¶ 28-39. Additionally, plaintiffs revised the prayer for relief to remove references to "undetectable" and "unserialized" firearms, and to instead request "a declaratory judgment that Oregon's Bans are unconstitutional facially and as-applied under the Second and Fourteenth Amendments to the United States Constitution." *Id.* at 13. Plaintiffs therefore mount both facial and as-applied challenges to the constitutionality of HB 2005.

Defendants filed the operative motion to dismiss the FAC or, in the alternative, for summary judgment, on October 22, 2024. Defs. Mot. to Dismiss FAC & Alt. Mot. for Summ. J. ("Defs. Mot."), ECF [37]. Plaintiffs filed a response in opposition and, in the alternative, cross moved for summary judgment on December 6, 2024. Pls. Resp. & Alt. Mot. for Summ. J. ("Pls. Resp."), ECF [40]. Defendants

filed a reply in support of their motion on December 30, 2024. Defs. Reply, ECF [41]. In support of their reply, defendants filed a declaration of one of their attorneys, in which defendants requested the opportunity to file declarations in opposition to plaintiffs' cross-motion for summary judgment if defendants' motion to dismiss is denied. Decl. Erin N. Dawson Supp. Defs. Reply, ECF [42]. On April 4, 2025, defendants filed a notice of supplemental authority alerting the Court to the Supreme Court's March 26, 2025, decision in *Bondi v. VanDerStok*, 604 U.S. ___, 145 S. Ct. 857 (2025), and the Ninth Circuit's March 20, 2025, decision in *Duncan v. Bonta*, 133 F.4th 852 (9th Cir. 2025). Defs. Notice of Suppl. Auths., ECF [45].

## DISCUSSION

The FAC does not contain sufficient allegations to state a claim for relief. In fact, it does not contain sufficient allegations to even determine whether the challenged conduct is protected under the Second Amendment. "[T]he Second and Fourteenth Amendments protect an individual right to keep and bear arms for self-defense." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 17 (2022); *see* U.S. Const. amend. II ("A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."). This right is "among the 'fundamental rights necessary to our system of ordered liberty.'" *United States v. Rahimi*, 602 U.S. 680, 690 (2024) (quoting *McDonald v. Chicago*, 561 U.S. 742, 778 (2010)). "'Like most rights,' though, 'the right secured by the Second Amendment is not unlimited.'" *Id.* at 690-91 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)). Conduct is "presumptively protect[ed]" when it is covered by "the Second Amendment's plain text[.]" *Bruen*, 597 U.S. at 17. Not all conduct that involves firearms is covered under this plain text analysis. *See United States v. Perez-Garcia*, 96 F.4th 1166, 1181 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 2707 (Mem) (2025). Only conduct involving arms that are "'"in common use" today for self-defense'" are presumptively protected. *Id.* at 1180-81 (quoting *Bruen*, 597 U.S. at 32). "[W]eapons not typically possessed by law-abiding citizens for lawful purposes" are therefore not entitled to presumptive protection. *Heller*, 554 U.S. at 625. For example, "short-barreled shotguns" fall outside of the Second Amendment's

7

plain text. *Id.* The Ninth Circuit has speculated that "ghost guns"[2] may similarly fall outside the Second Amendment's purview. *See Perez-Garcia*, 96 F.4th at 1180 (quoting *Heller*, 554 U.S. at 627) ("The Second Amendment may not protect [a person's] right to bear or keep 'dangerous and unusual weapons,' which might include ghost guns or silencers or armor-piercing ammunition."). If the conduct at issue is presumptively protected, the government bears the burden of proving that the challenged "regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 18.

Plaintiffs do not sufficiently allege that HB 2005 concerns firearms commonly in use by "'law-abiding citizens with ordinary self-defense needs.'" *Or. Firearms Fed'n v. Kotek*, 682 F. Supp. 3d 874, 920 (D. Or. 2023) (quoting *Bruen*, 597 U.S. at 60). On one hand, plaintiffs allege that certain firearms, including semiautomatic handguns and rifles, are of common lawful use. *See* FAC ¶¶ 25-36. On the other, plaintiffs recognize that HB 2005 concerns undetectable firearms, unserialized firearms, and unserialized unfinished firearm frames and receivers ("precursors"). *See id.* ¶¶ 17-19. Plaintiffs do not allege, however, that undetectable firearms, unserialized firearms, and unserialized firearm precursors—*i.e.*, the firearms regulated by HB 2005—are of common lawful use.

Plaintiffs allege that HB 2005 bans personally manufactured firearms, FAC ¶ 2, but, on its face and by its plain text, HB 2005 mentions nothing of the sort. Plaintiffs also allege that HB 2005 prohibits them from "personally manufacturing common categories of constitutionally protected firearms," FAC ¶ 4, but again, HB 2005 is silent on this issue. Absent from the FAC are any allegations explaining *how* HB 2005's prohibitions on undetectable and unserialized firearms and firearm precursors "effectively ban[] the sale and possession of constitutionally protected personally manufactured firearms and certain precursor parts and materials necessary to personally manufacture constitutionally protected firearms."

---

[2] "Ghost guns" are generally understood to mean untraceable personally made firearms. *See Bondi*, 145 S. Ct. at 863-64 (describing "ghost guns" as being made from weapon parts kits that have not historically been subject to the regulations of the Gun Control Act of 1968 ("GCA") and thus are not marked with serial numbers); *see also* 87 Fed. Reg. 24652 ("Such privately made firearms ('PMFs') . . . are not required by the GCA to have a serial number . . . making it difficult for law enforcement to determine where, by whom, or when they were manufactured, and to whom they were sold or otherwise transferred. Because of the difficulty with tracing illegal sold or distributed PMFs, those firearms are also commonly referred to as 'ghost guns.'").

FAC ¶ 14.

That is not to say that plaintiffs' allegations are nonsensical. Although HB 2005 does not discuss personal manufacturing, certain provisions could be read to foreclose this ability. Under ORS § 166.266(1), "[a] person may not knowingly possess, offer for sale, sell or transfer a firearm unless the firearm has been imprinted with a serial number by a federally licensed firearm manufacturer, importer or dealer, or a gunsmith with a federal firearms license, in accordance with federal law." There is no exemption for personal manufacturers to maintain possession until they get the firearm serialized. Rather, only gunsmiths may "tak[e] possession of a firearm for the purpose of imprinting the firearm with a serial number[.]" Or. Rev. Stat. § 166.266(2)(e). Defendants argue that HB 2005 "does not prevent anyone from self-manufacturing a detectable and serialized firearm[,]" Defs. Reply 6, but it is not clear how a person who is not a federally licensed entity or gunsmith could complete that task. If a serial number can only be applied by a federally licensed entity, and it is unlawful to possess for any period of time a firearm that does not have a serial number unless you are a federally licensed entity or gunsmith, it is unclear how an unlicensed individual could personally manufacture a lawful firearm on their own. Defendants do not answer this question.[3]

Separately, under ORS § 166.267(2)(a), a person may not possess an unserialized and unfinished frame or receiver unless the person is a federally licensed gun manufacturer completing a manufacturing process that includes serialization. The statute does not similarly exempt unlicensed home manufacturers who possess unfinished frames or receivers within a manufacturing process that includes serialization. Although plaintiffs do not allege that an unfinished frame or receiver is a necessary component in self-manufacturing a firearm, that conclusion can be comfortably inferred. *See California v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 718 F. Supp. 3d 1060, 1065-66 (N.D. Cal. 2024) (cleaned up) ("In essence, the receiver (for a long gun) or a frame (for a handgun) is the part of the weapon

---

[3] Of course, plaintiffs do not ask this question either. Because the pleadings are unclear, the parties' arguments largely pass each other like ships in the night, with plaintiffs arguing vaguely about personally manufactured firearms and defendants arguing instead about undetectable and unserialized firearms.

that houses the hammer, bolt, or breechblock, as well as the firing mechanism. It is a significant piece of a firearm."); *see also* 18 U.S.C. § 921(a)(3) (defining the term "firearm" to include "the frame or receiver of any such weapon"). It thus appears that this provision could be read to effectively prohibit self-manufacturing.[4]

However, none of that emerges naturally from plaintiffs' allegations. The FAC does not sift out the above provisions, nor does it explain how the remainder of HB 2005 could be said to implicate the asserted right to personal manufacturing. For example, nothing in the FAC suggests that ORS § 166.265, the undetectability provision, could be read to prevent self-manufacturing. In fact, plaintiffs do not allege how undetectability restrictions in any way impede their ability to manufacture firearms.[5] Nor does the FAC allege how the restrictions on importing, selling, or transferring undetectable and unserialized firearms and firearm precursors impacts their ability to self-manufacture.

The FAC instead sweeps HB 2005 with a broad brush, treating it as one singular regulation of self-manufactured firearms. In reality, HB 2005 concerns three separate types of firearms and firearm precursors, none of which, at least by their plain text, involve self-manufacturing. First, ORS § 166.265 concerns undetectable firearms, *i.e.*, firearms that are built entirely of nonmetal substances and cannot be detected by x-rays or metal detectors. Or. Rev. Stat. § 166.210(17). Second, ORS § 166.266 concerns unserialized firearms. It prohibits selling, transferring, or possessing firearms that have not "been imprinted with a serial number by a federally licensed firearm manufacturer, importer or dealer, or a gunsmith with a

---

[4] *Compare* HB 2005 with *Fahr v. City of San Diego*, No. 21-cv-01676-BAS-BGS, 2021 WL 4895974, at *2 (S.D. Cal. Oct. 20, 2021). In *Fahr*, the District Court for the Southern District of California addressed an ordinance that similarly made it unlawful to possess "'an unfinished frame or unfinished receiver, unless the unfinished frame or unfinished receiver is imprinted with a serial number issued to that unfinished frame or unfinished receiver by a Federal Firearms Importer or Federal Firearms Manufacturer[.]'" *Id.* (citation omitted). However, that ordinance also exempted unfinished frames or receivers that were "engraved or permanently affixed with a serial number provided by the California Department of Justice for that unfinished frame or unfinished receiver," thus providing a way for self-manufacturers to independently complete the process. *Id.*

[5] Based on the allegations in the FAC, it is questionable whether plaintiffs even have standing to challenge this provision. While the FAC explicitly alleges that the individual plaintiffs possessed unserialized firearms, it does not allege that any of the plaintiffs possessed undetectable firearms. *See* FAC ¶¶ 7-9. At most, plaintiffs allege that they possessed firearms made from polymer precursors, polymer frames, and frames that were 3D printed using PLA+ filament. *See id.* It is not clear whether plaintiffs possess anything that would qualify as an "undetectable firearm" under ORS §§ 166.265 and 166.210(17).

federal firearms license, in accordance with federal law." Or. Rev. Stat. § 166.266(1). Finally, ORS § 166.267 concerns unserialized unfinished frames or receivers.

Because plaintiffs conflate these three statutes, it is unclear what exactly they are challenging. As stated above, the Second Amendment presumptively protects arms in common use "'by law-abiding citizens with ordinary self-defense needs.'" *Or. Firearms Fed'n*, 682 F. Supp. 3d at 920 (quoting *Bruen*, 597 U.S. at 60). Plaintiffs allege that semiautomatic rifles and Glock-style handguns are in common use, FAC ¶¶ 28-36, but that is beside the point.[6] HB 2005 does not regulate semiautomatic rifles or Glock-style handguns; it regulates undetectable and unserialized firearms and firearm precursors. The FAC does not contain any allegations supporting the inference that any of the prohibited firearms are of common use, let alone for lawful purposes. All that plaintiffs allege is that "the firearms subject [HB 2005] are 'arms' 'in common use' for lawful purposes." FAC ¶ 27. That recitation of the legal standard is precisely the sort of legal conclusion that cannot be credited. *See Iqbal*, 556 U.S. at 678-79. By contrast, the "firearms subject to [HB 2005]," when considered collectively, are exactly the type of so-called "ghost guns" that the Ninth Circuit has speculated may fall outside the Second Amendment's protection. *See Perez-Garcia*, 96 F.4th at 1180 ("The Second Amendment may not protect [the defendant's] right to bear or keep 'dangerous and unusual weapons,' which might include ghost guns or silencers or armor-piercing ammunition.") (quoting *Heller*, 554 U.S. at 627). Without more, plaintiffs have not sufficiently alleged that the firearms at issue are common for lawful purposes. Plaintiffs' allegations are therefore insufficient to determine whether the challenged conduct falls within the Second Amendment's protection.

For all these reasons, the motion to dismiss is granted. Because it appears possible that plaintiffs could cure the identified deficiencies and state a plausible claim, dismissal with leave to amend is appropriate.

---

[6] In their opposition, plaintiffs state that "[n]o other type of firearm [other than semiautomatic handguns and rifles] is at issue here." Pls. Resp. 17. However, the FAC raises both as-applied and facial challenges to HB 2005. FAC ¶ 13. It is therefore unclear whether plaintiffs are continuing to pursue the facial challenge. *See City of Los Angeles v. Patel*, 576 U.S. 409, 418 (2015) (explaining that facial challenges require plaintiffs to establish that a law is unconstitutional in all of the applications in which it authorizes or prohibits conduct).

## CONCLUSION

For the reasons stated herein, defendants' motion to dismiss, ECF [37], is granted, and the Court does not reach the cross-motions for summary judgment. The First Amended Complaint, ECF [36], is DISMISSED with leave to amend. If plaintiffs wish to file a second amended complaint, they must do so within thirty (30) days of the date of this Opinion and Order.

IT IS SO ORDERED.

DATED this 29th day of September, 2025.

_____
Adrienne Nelson
United States District Judge